SUMMONS ISSUED    ORIGINAL

# THE PEOPLE OF THE UNITED STATES

James S. Hawkins-El III, c/o 159 Bch 97th St. Rockaway Bch NY 11693, (718) 945 6516

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------o

James S. Hawkins-El III,

Plaintiff,

v

First American Funding, LLC
318 Main St. Suite 201 Millburn NJ 07041
Ira Bailey, Maria Green, Sonia LaRiccia
and Brandon Bailey,

Defendants.
-----------------------------------------------------o

CV11 -    2423

IRIZARRY, J.

COMPLAINT. M.J

"Jury Trial Demanded"



RECEIVED
MAY 1 9 2011
PRO SE OFFICE

1. At all times hereinafter The People: James S. Hawkins-El III, plaintiff was and still is domiciled in The United States of America, namely the State of New York, Legally residing at 159 Bch 97th St. Rockaway Bch, Queens New York 11693,

2. Defendants Ira Bailey ("V.P."), Maria Green (Loss Mitigation Specialist), Brandon Bailey(Assets Manager) and Sonia LaRiccia(Title unknown), collectively are First American Funding LLC 318 Main St. Suite 201 Millburn New Jersey 07041 registered in the State of New Jersey. (hereinafter, F.A. F. LLC),

3. This action is brought for violations of Fair Debt Collection Act 15 USC § 1692(e) § 807 (2)(A), (3), (8), (10); (d) § 806 (2); (g) § 809 (a)(4), (B) § 1692 (k) (a)(1), (2)(A), (3),

1

(b)(1), (c), (d); Real Estate Settlement Procedure Act 12 USC § 2605(e)(1)(a), (b)(i)(ii), (2)(d)(i)(ii),; Fraud and Negligence,

## JURISDICTION

4. This court has jurisdiction pursuant to Fair Debt Collection Act 15 USC § 1692; Real Estate Settlement Procedure Act 12 USC § 2605; Diversity of Citizen §1332

5. Note:

"**Dodd-Frank Act**, signed into law on **July 21, 2010**: Timelines shortened and Other RESPA…Changes: The Act changes acknowledgement deadlines for QWRs from 15 days to only 5 days. The Act also changes the substantive response deadline from 60 to just 30 days. **Damages:** The Act raises the available damages for failing to respond to RESPA request as required for each violation under 12 U.S.C. § 2605 as follows : (1) Individuals: actual damages plus $ 1000 increased to actual damages plus $2000,"

## THE FACTS

### AFFIDAVIT

I AM, James S. Hawkins-El III, plaintiff, do so affirm and say,

6. that on **Aug. 3, 2010**, unbeknownst to me, **JP Morgan Chase sold Disputed Loan** [WaMu Equity Plus CREDIT LINE MORTGAGE # 0742069008, "Credit Agreement, maximum credit limit of 100, 000.00] **(Ex. D),** Assignment of Mortgage, dated Aug. 3, 2010 **(Ex. B)** "As Is," while it was still in Dispute with the Comptroller of The Currency, (OCC) (Case #01036677, Dec. 31, 2009-Nov. 2, 2010) **(Ex. A & C)** and the buyer, Ira

Bailey, who states he is the buyer and "V.P." of First American Funding LLC, states "Assignee confirms that it has taken such steps as it deems appropriate with respect to conducting due diligence with respect to the status and quality of the Mortgage Loan, Note and deed of Trust/Mortgage," i.e., Ira Bailey, First American Funding LLC knew or should have known of the Disputed status of his/its purchase and that the **Comptroller had not render a resolution in the dispute,** which came **Nov. 2, 2010, 3 months after the Aug. 3, 2010 sale** and purchase, stating **"Your dispute also involves provisions of your contract with the bank. We <u>cannot intercede</u> in a private party situation regarding the interpretation or enforcement of your contract. <u>The OCC does not have the judicial power</u> to interpret or enforce private contractual agreement i.e. <u>the dispute was not resolved by the OCC</u> nor could the sale of the disputed debt, three months before the resolution of the OCC, cure or resolve the legal dispute,**

7. that I received a **letter, dated Aug. 9, 2010**, informing me of a transfer **(Ex. E),** with **absolutely no loan numbers identifying what purported loan was being transferred,** sent by Brandon Bailey, Asset Manager, F. A. F. LLC, sent to "Mr. James Hawkins,"

8. that an **Undated letter (Ex. F)** was sent by me in response to the Aug. 9, 2010 letter of transfer informing F. A. F. LLC that I am not "Mr. James S. Hawkins" and "I have not received any 'good-by letter' from JP Morgan Chase Bank as also stated in said letter" and "Perhaps you have made a mistake in contacting me in this matter. Please check your records." <u>Brandon Bailey did not respond nor did any one else from F.AF.LLC,</u>

9. that the **exact same letter** of transfer, dated Aug. 9, 2010 sent to me, was sent, letter dated Aug. 19, 2010 **(Ex. G),** by Brandon Bailey to Valerie Gaston,

10. that a **2ⁿᵈ Lawful Notice** dated Aug. 22, 2010 **(Ex, H)** was sent by me, pursuant to the Aug. 19, 2010 letter to Valerie Gaston, to Brandon Bailey stating "I, again implore you, as in my first letter delivered to your suite Aug. 18, 2010, which you have yet to respond, 'please check your records in this legal matter,' as it is now obvious that you have made a  mistake in your demand for payment from me for the "mortgage loan' described in your letters dated Aug. 9, 2010 and Aug. 19, 2010." Brandon Bailey did not respond nor did any one else from F.A.F. LLC,

11. that **a letter** was sent by Maria Green, Loss Mitigation Specialist, **dated Aug. 23, 2010** "RE: 159 Beach 97ᵗʰ St, Rockaway Beach, NY 11693 Chase Loan # 100001419400069008 FA Loan # R07101000-RC **(Ex. I)** stating "Copy of Assignment & Good-By Letter Enclosed," but does not list the disputed "loan # 0742069008," nor is there any "Good-by Letter Enclosed" from "Chase,"

12. that a **3ʳᵈ Lawful Notice dated Aug. 26, 2010 (Ex. J)** was sent by me in response to Maria Green's Aug. 23, 2010 letter, which stated clearly "**3**. "Notice of Assignment from Cory Walker is an incomplete instrument, and so invalid **4**. that 'JP Morgan Chase Bank' has not sent me a 'Copy of Assignment & Good-By Letter' as stated in your letter dated Aug. 23, 2010 **5**. that the information on NYC Dept. of Finance Office of The City Register dated Nov. 1, 2006 **(EX. K)** is, to my knowledge and understanding, false, as I never borrowed $100,000.00 from WaMu Mutual Bank, F.A., nor did WaMu lend me 100,000.00 Nov. 1, 2006 **8**. that the **DEBT** that I have with JP Morgan Chase Bank, N.A. is in "DISPUTE" and that the **'DISPUTED DEBT,' IN ITS ENTIRETY**, is now and has been for quite some time, with **FDIC** and **THE OFFICE OF THE COMPTROLLER OF THE CURRENCY under investigation and review, 9.** that

from this juncture, of Lawful Notification/Affidavit, any act on the part of First American Funding to demand payments on this DISPUTED DEBT must be considered an act, willingly and knowingly, to illegally procure payments on this DEBT IN DISPUTE by fraudulent means, as upon Lawful Notice it is incumbent upon the notified party to, with all due and necessary diligence, investigate the validity of the content of said notice, less at a later date be found to have intentionally, by proof of such notice, moved unlawfully, **10.** that if First American Funding has the right under the law to collect payment on this **DEBT IN DISPUTE**, please **cite the contractual or statutory authority** etc by which First American Funding is lawfully moving **WHICH GRANTED** First American Funding **legal power and authority to have resolved the DISPUTE**, which **THE OFFICE OF THE COMPTROLLER OF THE CURRENCY/ADMINISTRATOR OF NATIONAL BANKS has not yet resolved**, in order for First American Funding to make a lawful demand for payment on or of said **DISPUTED DEBT**." Maria Green sent no response nor did any one else from F.A.F. LLC,

13. that a **Lawful Notice**, dated Sept. 7, 2010 was sent to NYC DEPARTMENT OF FINANCE (**Ex. L**) stating "we have never borrowed $100,000.00 from WASHINGTON MUTUAL BANK, F.A.' and copied the same to the presenter: Christine Weremijenko 2150 Cabot Blvd West Langhorne, PA 19047 phone 800-570-8928 (The phone number is to a sex talk line) CWEREM@GROUP9.NET. No response was sent from NYC Dept. of Finance and the letter sent to the "presenter: Christine Weremijenko was sent back undelivered,

14. that a **Notice of Intention to Foreclose** was sent by Maria Green, **dated Sept. 13, 2010 (Ex. M)** which states in item No: 2 **"If there is any reason to dispute the debt, or

any portion thereof, you must notify **First American Funding LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated"** and also states "You are in default under the terms of the promissory note evidencing your loan" yet the "Credit Line Mortgage" she sent Aug. 23, 2010 disproves absolutely that any such loan ($100,000.00 as falsely recorded with the NYC DEPARTMENT OF FINANCE) was ever made to or defaulted on by me,

15. that a **4ᵗʰ Lawful Notice**, DISPUTE OF DEBT **dated Sept. 18, 2010(Ex. O)** was sent by me in response to Maria Green's Sept. 13, 2010 "Notice of Intention to Foreclose," which states "3. that pursuant to item No: 2 in your letter dated Sept. 13, 2010, which state 'If there is a reason to dispute the debt,' I have attached the final "LAWFUL NOTICE/AFFIDAVIT" dated Feb 20, 2010 **(Ex. N)** sent to the OFFICE OF THE COMPTROLLER OF CURRENCY/ADMINISTRATOR OF NATIONAL BANKS and copied to Don Suter/CHASE BANK, CASE#**01036677**...4. that JP MORGAN CHASE BANK N.A. DID NOT CHALLENGE, REFUTE OR OBJECT IN ANY WAY to the above stated LAWFUL/AFFIDAVIT...5. that JP MORGAN CHASE BANK N.A. sold the "DISPUTE DEBT" in "As Is condition with all faults, without any recourse to Assignor whatsoever..." while it was still in "DISPUTE 6. that the SALE of the 'DISPUTED DEBT' did not cure the BREACH of "THE AGREEMENT' or resolve the 'VIOLATION OF LAW' or "THE DISPUTE,'" Maria Green did not respond nor any one else from F.A.F. LLC,

16. that **a letter dated Nov. 22, 2010 (Ex. P)** was sent to me by Sonia LaRiccia which stated "You could lose your home your home loan is 180+ days in default" but does not give a loan number in her letter,

17. that on Feb. 14, 2011 I received a call (718 246-8080) from Roxanne of Mutual Housing Association of NY informing me that my home was on the pre-foreclosure list pursuant to information from the New York State Banking Department, which caused me extreme alarm, also to add to the extreme alarm I received a three fold postcard: "**STOP FORECLOSURE FOR FREE, Message from Your Elected Officials, THE CITY OF NEW YORK OFFICE OF THE MAYOR, NEW YORK, NY 10007, 'PRSRT STD US POSTAGE PAID PHOENIX, AZ PERMIT # 5558'" (Ex. R-1)**

18. that on Feb. 16, 2011 10:38 am, I called Maria Green telling her I would send a fax, of the OCC Nov. 2, 2010 resolution; dispute of debt case #01036677, a case she already had knowledge of since Aug. 26, 2010, which was faxed **(Ex. Q),** Fax #1 973 912-4466 12:49 noon, to First American Funding LLC,

19. that on Feb. 16, 2011, 3:16 pm, Maria Green called back pursuant to the fax and gave me Ira Bailey's ext. (103), as she could not determine the legal significance of the document. I called Ira Bailey 3:18 pm, and he could not answer the legal questions posed by the dispute resolution case # 01036677, a case which Maria Green had knowledge of since receipt of Aug. 26, 2010 3rd Lawful Notice and the Sept 18, 2010 4th Lawful Notice Dispute of Debt. Ira Bailey was reluctant to turn the Nov. 2, 2010 resolution over to the lawyers that he, Maria Green and Sonia LaRiccia agreed were the only ones who could make sense of it, as they could not, stating "we are not lawyers" and had no authority or expertise to do so, but upon my unceasing insistence to "give it to your lawyer" which I had to repeated over and over without pause until he said "okay I don't usually do this, but alright I'll overnight it to our lawyer-I'll have him(Eric Heinsler) call you tomorrow." I was also given, upon my request, Eric Heinsler's phone number (565 760-8218),

20. that on Feb. 17, 2011 2:18 pm, I called Maria Green and asked why she did not respond to my Sept. 18, 2010 Lawful Notice Dispute of Debt and are the wheels of the Dispute process turning and did she review the Nov. 2, 2010 OCC resolution faxed to her the previous day, but she did not respond. I also asked her perhaps there was an oversight? To which she finally replied, sharply, "no there was no oversight,"

21. that on Feb. 17, 2011, 2:58 pm, I called Eric Heinsler, #565 760-8218, he was on the phone so I left my number with his secretary, Christina Luciano, who said he would call back, he did not,

22. that on Feb. 17, 2011, 3:36 pm, I called Eric Heinsler again and left a message on his answering machine to call me back, he did not,

23. that on Feb. 17, 2011, 4:26 pm, I called Eric Heinsler again and left a message on his answering machine to call me back, he did not,

24. that on Feb. 17, 2011, 4:55 pm, I called Eric Heinsler  again and left a message on his answering machine to call me back, he did not,

25. that on Feb. 17, 2011, 4:56 pm, I called Maria Green and asked for her C.E.O. She gave me Ira Bailey's ext 103 who told me keep trying the number because that is who I needed to speak to not him,

26. that on Feb. 18, 2011 a payment was made, under protest and extreme duress, by me, by phone, to Maria Green in the sum of $5,564.38 **(Ex. Z)** to stop the illegal foreclosure process initiated by Maria Green, which according to Maria Green, Ira Bailey, and Sonia LaRiccia was already in the hands of an F.A.F LLC attorney named Eric Heinsler,

8

27. that on Feb. 22, 2011, 9:28 am, I called Eric Heinsler (585 &60-8218) and left a message with Christina Luciano for Eric Heinsler to call me back, he did not,

28. that on Feb. 23, 2011, 1:00 pm, I called Eric Heinsler and left a message on his answering machine to call me back, he did not,

29. that on Feb. 23, 2011, 6:24 pm, I called First American Funding LLC, Ira Bailey picked up, I told him I was not able to contact the lawyer, Eric Heinsler, could he give the correct spelling of his name, he said he does not know it, he'll call me in the morning. He asked "did you give a payment?" I responded that "I took, in protest, legal steps to avoid and prevent a negative and an unlawful legal entanglement adverse to my well being,

30. that on Feb. 24, 2011, 9:09 am, I called Eric Heinsler and left a message on his answering machine to call me back, he did not,

31. that on Feb. 24, 2011, 9:14 am, I called Ira Bailey and left a message on his answering machine to call me back, he did not,

32. that on Feb. 24, 2011, I called  Ira Bailey, Sonia LaRiccia answered and was questioned by me as to the position Eric Heinsler occupied at the law firm, which up-set her to such a point she hung-up the phone on me,

33. that on Feb. 24, 2011, 11:00 am, Sonia LaRiccia called me back after hanging up on me and said Eric Heinsler is on vacation until Mon. Feb. 28, 2011 stating, very sarcastically,  "He has a right to go on vacation doesn't he!?" She also stated he received the fax of the Nov. 2, 2010 OCC resolution, but did not know when, although she said she had sent it,

34. that on Feb. 24, 2011, 11:36 am, I called Sonia LaRiccia back and asked her who purchased the item, disputed loan/debt. She said she did not know,

35. that on Feb. 24, 2011, 1:41 pm, Ira Bailey called me back and said he was responsible for the purchase of the disputed debt and knew that it was disputed when he purchased it. He stated that "You just can't keep calling" "I'm trying to tell you something for your own good" "you don't have a legal stance" "I know what the lawyer is going to say, well I think I know what he'll say" "we really like you around here but you can't keep calling" "its going to cost you big time to follow-up on your dispute" "I've been around in this business for a long time and believe me these thing don't turn out good for guys like you." I told him again I paid under extreme duress and threat of foreclosure on my home,

36. that Feb, 24, 2011, 2:13 pm, Maria Green called me and said the attorney could be called on Monday because he's on vacation,

37. that a Lawful Notice: Payment made Due, Fear, Duress and Threat, dated Feb. 27th, 2011, was sent by me to Ira Bailey stating "I respectfully request the $5,564.38 be refunded to me immediately as it was procured illegally, as the proper dispute process was not adhered to by the Officers of FIRST AMERICAN FUNDING LLC" Ira Bailey did not respond nor any one else from F.A.F. LLC.

38. that on Feb. 28, 2011, 9:48 am, I called Eric Heinsler and left a message with Christina Luciano for him to call me back, he did not,

39. that on Feb. 28, 2011, 10: 08 am, I called Eric Heinsler, at a number I had to find on a computer search (585 546-6448), and an operator immediately connected me to Eric Heinsler yet he did not pick up. The operator said he was in and his hours are 9-5pm. I asked the operator if he was an associate or partner, to which, she reply, "no he is a

paralegal." His answering machine said he won't be taking any messages so do not leave any,

40. that on Feb. 28, 2011, 1:23 pm, I called Eric Heinsler, Foreclosure Manager, Paralegal, of Davidson and Fink Law Firm 28 East Main St. Suite 1700 Rochester NY 14614, #585 546 6448, and finally got him on the phone. I asked him was he a lawyer and he said "No I am not a lawyer nor do I want to give that impression." I asked him did he receive the file and fax on Feb. 17, 2011, he said yes. I asked him if he had examined the Nov. 2, 2010 resolution from the OCC. He said yes he had, but could not give a legal opinion on the document for F.A.F. LLC, because he was not qualified as a lawyer or authorized to speak on their behalf in this legal matter, and that he should be charging me for the time we were speaking on the phone, so he was ending the courtesy he was extending to me by speaking to me on the issue in question, and was ending our conversation which he abruptly did.

41. that on Mar. 2, 2011 1:48, pm, Maria Green called me and stated "this call is to remind you of a payment due Mar. 1, 2011,"

42. that on Mar. 7, 2011, 9:07 am, I called Maria Green and asked her what exactly was F.A.F. LLC pursuant to its business category. She said she did not know and referred me to the Human Resource Dept, Brandon Bailey, who did not know either and referred me to Ira Bailey who when asked where F.AF. LLC was incorporated he said the State of New Jersey. Ira Bailey then flew off the handle into a violent rage and started yelling "you come at this organization" "your just full of letters and words" "do something, I did something you do something," "we have been incorporated in New Jersey many, many years" but did not know the year of incorporation" and also stated "I am the Vice

President when I asked his official title, as I told him I could not find the F.A.F. LLC at location, 318 main St. Suite 201 Millburn NY 07041,

43. that on Mar. 14, 2011, 12:49 pm, Maria Green called to remind me, again, of a Mar. 1, 2011 payment,

44. that on Mar. 14, 2011, 1:05 pm, I called Sonia LaRiccia, and Tina Pope answered and told me I would have to "talk to our attorney Eric Heinsler at phone # 585 760-8218,"

45. that on Mar. 16, 2011, 2:00 pm, I called Eric Heinsler and left a message on his answering machine stating Ira bailey insist you are his attorney I would just like to know is there any truth to that statement, Eric Heinsler did not call back,

46. that on Mar. 16, 2011, 2:08, I called Ira Bailey who started yelling as soon as I said good afternoon and stated my name exclaiming "I don't have time for this" "we have nothing to talk about" "I gave the whole package to the Attorney Generals, I overnighted it" referring to exactly what package I don't know, "go get a lawyer I'll send him my incorporation papers, all of it" "you got a lot of nerve calling yourself the People of the United States etc" and then yelled at me as to how up-set he was about things "you know your really up-setting me" "all you got is words" "I did something you do something" and then hung-up on me,

47. that a 2nd & Final Lawful Notice! requesting a return of payment, $5,564.38, dated April 2, 2011, was sent by me to Ira Bailey stating **"that the hostile and abrasive manner you displayed was rather unnerving, highly disrespectful and quite alarming as you showed no concern whatsoever for me as a human being or any law, or your legal duties and responsibilities correlative to such law, governing a "Vice**

President's" professional conduct in such legal matters... that this final request is made in good faith in a sincere effort to remedy this legal problem before litigation" Ira Bailey did not respond nor any one else from F.A.F. LLC,

48. that a **Notice of Default and Right To Cure**, dated April 2, 2011 **(Ex. T)**, was sent by Maria Green stating again in item No: 2. **"If there is reason to dispute the debt, or any portion thereof , you must notify First American Funding, LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated,"**

49. that **a letter dated April 2, 2011(Ex. U)** was sent by Sonia LaRiccia stating "you could lose your home," which had no identifying numbers as to what "home loan is 30+ days in default,"

50. that a **5th Lawful Notice** Dispute of Debt 2nd Qualified Written Request, as it repeats the 4th QWR, dated April 8, 2011**(Ex. V)** was sent to Maria Green in response to Maria Green's April 2, 2011 Notice of Default to which Maria green has not replied or any one else from F.A.F. LLC,

51. that on April, 14, 2011, 8:08 pm I receive, to my alarm, a call, again, from Roxanne of Mutual Housing Association, phone 718 246-8080, of N.Y, pursuant pre-foreclose assistance,

52. that on April 15, 2011 a payment, check # 127, was sent to Ira Bailey, received and returned by F.A.F. LLC with no explanation as to why,

53. that on April 26, 2011, I called Ira Bailey, Sonia LaRiccia said the he was not in and that he would be in tomorrow,

54. that on **April 27, 2011 3:02 pm, I return Ira Bailey's call** which I miss by 3 minutes. I opened the call by asking him why he had sent my check, # 127, back, to which Ira Bailey went on an explosive tirade which lasted for approximately 19 minutes, which was the entire length of the call. I tried to calm him down, but to no avail, as he continued to scream at the top of his voice that "why would you put my name on that check,#127," "I'm tired of this shit" "all these letters you sent" "your going to be charged legal fees for any more calls you make to us" "I don't have to play by the rules you do" I don't like you any more" you'll be getting a letter from my attorney" "you don't know what your talking about" "you're a whiner nothing but a whiner" "your really up-setting me with your junk" "don't call here anymore" "what did you do with the money?" "what is the dispute?" "you keep saying the OCC, "what is the dispute, hurry up make it fast, make it short" "what is the dispute" to which I said, very quickly, "the dispute sir is contained in my Lawful Notices you received" to which he shouted "we have all your letters on the wall" "we have to spend to much time on your case" "you know we put you back on the foreclosure list?" "you're harassing me with all these calls" and when I tried to speak he hung-up the phone,

55. that I will not call FA.F. LLC anymore, as defendant Ira Bailey has stated he feels I am harassing him, though I am not harassing him, nor is that my intent. It would be fruitless and harassing to call defendant Ira Bailey again, knowing that he feels he's being harassed by my phone calls; nor will I call any of his staff as they have stated, in very certain and absolute terms he or their lawyer, Eric Heinsler, are the only one's I can speak to concerning this legal matter. Thus I file this complaint,

14

# VIOLATIONS:

**Violations of Real Estate Settlement Procedure Act Sec 6 (e) Duty of loan servicer to respond to borrower inquiries (1) Notice of receipt of inquiry (A) (B);  (2) Action with respect to inquiry (A) (B)(i)(ii) (C)(i)(ii) (F) Damages and costs (1) (A)(B)**

56.  that F.A.F. LLC absolutely did not respond to any of the Lawful Notices sent by me which "qualified as "written request" as RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a [QWR] and respond accordingly. *Catalan v. GMAC Mortgage Corp. 629 F.3d 676 (7th Cir. 2011)*

57.  that F.A.F. LLC violated **(e) (A)** "Duty of loan servicer to respond with respect to borrower inquiries, because they did not provide a written response acknowledging receipt of the correspondence within 20 days,

58.  that F.A.F. LLC violated  **(e) (2)(A)(B)(C)** Action with respect to inquiry, because they did not, within 60 days or ever, **(A)** make appropriate correction in the account of the borrower nor conduct an investigation as required by **(B)** which states after conducting an investigation, provide the borrower with a written explanation or clarification that includes  **(i)** providing  the borrower with a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer… **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; nor did they conduct an investigation as require by **(C)** which states "after conducting an investigation provide the borrower with a written explanation or clarification that includes **(i)** information requested by the borrower or an explanation of why the

information requested is unavailable or cannot be obtained by servicer; and **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower,

59.  that all 5 Lawful Notices below "qualify as 'written request'", according to the 7th Cir 2011 case above cited, and none were answer at all, by the defendants, and all Violations of RESPA above mentioned apply to all 5 Lawful Notices below:

60.  **1)** that the **1st Lawful Notice**, undated, sent in response to Aug. 9, 2010 letter of transfer sent by Brandon Bailey which stated "I do not have a "home loan" nor Mortgage Loan payment" with JP Morgan Chase Bank as stated in your letter; additionally I have not received any "good-by letter" from JP Morgan Chase Bank as also stated in said letters…Perhaps you have made a mistake in contacting me in this matter. Please check your records."

61. **2)** that the **2nd Lawful Notice**, dated August 22, 2010 which inquired again "please check your records in this legal matter, as it is obvious you have made a mistake in your demand for payment from me for the "mortgage loan" described in your letters dated Aug. 9, 2010, and 19, 2010,"

62. **3)** that the **3rd Lawful Notice**, dated Aug. 26, 2010 sent in response to Aug. 23, 2010 from Maria Green which inquires "10. that if First American Funding has a right under the law to collect payment on this DEBT IN DSIPUTE, please cite the contractual or statutory authority etc by which First American Funding is lawfully moving WHICH GRANTED First American Funding legal power and authority to resolve the DISPUTE, which THE OFFICE OF THE COMPTROLLER OF THE CURRENCY/ADMINISTRATOR OF NATIONAL BANKS has not yet resolved, in

order for First American Funding to make a lawful demand for payment on or of said DISPUTED DEBT,"

63. 4) that the 4th Lawful Notice Dispute of Debt, dated Sept 18, was sent in response to Maria Greens Sept. 13, 2010 Notice of Intention to Foreclose, which gives her notice again of the OCC Dispute case #01036677 and states "JP MORGAN CHASE BANK N.A. sold the "DISPUTED DEBT' in "As Is condition with all faults, without any recourse to Assignor whatsoever..."while it was still in "DISPUTE,"

64. 5) that the 5th Lawful Notice Dispute of Debt is marked 2nd Qualified Written as it refers Maria Green back to the 4th Lawful Notice Dispute of Debt which was attached and repeated in its entirety,

## Violations of Fair Debt Collection Act 1692 (g) § 809. Validation of debts (A)(4), (B):

65. that F.A.F. LLC violated (A)(4) of this section, because they did not obtain verification of the debt or a copy of a judgment against the consumer and did not mail the same to me, due expressly to the fact that the "debt dispute" was still in progress with the OCC, case# 01036677, when FA.F. LLC purchased it and resolution was not rendered until three months thereafter, as commanded by (A)(4) of this section which states "if the consumer notifies the debt collector within the thirty day period that the debt, or any portion thereof, is disputed will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector,

66. that F.A.F. LLC violated (B) of this section, because they did not cease collection of the debt, though they were given written notice of the OCC Dispute of Debt by Lawful

17

Notice Aug. 26, 2010 and Lawful Notice DISPUTE OF DEBT Sept. 18, 2010 while the dispute of debt was still in progress, yet still did not cease collection of the debt as commanded by **(B)** of this section which states **"If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (A) that the debt, or any portion thereof, is disputed…the debt collector shall cease collection of the debt or disputed portion thereof, until the debt collector obtains… copy of judgment.."** F.A.F. LLC received a resolution from the OCC but admittedly could not decipher it and willingly, knowingly and deliberately did not make any effort to give to a qualified attorney to examine the same, but rather fraudulently claimed that Eric Heinsler was an attorney, upon which I relied, in good faith, to my injury,

**Violations of Fair Debt Collection Act 1692 (e) § 807. False or misleading representations (2)(A), (3), (8), (10):**

67.  that F.A.F. LLC violated **(2) (A)** of this section, because they made false representation pursuant to the character of the "loan" Equity Line of Credit being a home loan, amount of the "loan" ($100,000.00), Credit Limit of $100,000.00 and legal status of the Disputed Debt as being Undisputed, where it is a violation pursuant **(2) (A)** of this section to use any false representation of the character, amount or legal status of any debt, and defendants relayed, or caused to be relayed, such false information to the NY State Banking Dept. causing my home to be placed on the pre-foreclosure list,

68.  that F.A.F. LLC violated **(3)** of this section, because they made a false and misleading representations that Eric Heinsler was a lawyer/attorney when he is not and

that he was F.A.F. LLC's lawyer/attorney, where it is a violation pursuant to **(3)** of this section to make false representation or implication that an individual is an attorney,

69.   that F.A.F. LLC violated **(8)** of this section, because they failed to communicate the disputed debt was and still is in dispute, where it is a violation pursuant to **(8)** to fail to communicate that a disputed debt is disputed,

70.   that F.A.F. LLC violated **(10)** of this section, because they used false representations and deceptive means to collect on the disputed debt in question, by quoting requirements of RESPA and FDCPA which they did not plan to comply with, and in fact did not comply with, and are still not in compliance with, and are still making false representation as though they are going to comply,

**Violations of Fair Debt Collection Act 1692 (d) § 806. Harassment or abuse (2)**

71.   that F.A.F. LLC violated **(2)** of this section because of the screaming, yelling, profanity, insult laced tirades, obscenities, threats of extra fees for calling, threats of foreclosure, and the numerous hang-ups etc, where it is a violation pursuant to **(2)** of this section to use obscene or profane language or language the natural consequence of which is to abuse the hearer or reader,

## Negligence:

**"The elements of a cause of action for negligence are 1) a legal duty of due care 2) a breach of that duty 3) a reasonably close causal connection between that breach and plaintiff's resulting injury 4) actual loss or damage to the plaintiff"** *People v. Young,*

*20 Cal. 2d 832, 129 P.2d 353 (1942); Ahem v. Dillenback, 1 Cal. App. 4th 36, 1 Cal. Rpt. 2d 239 (1991)*

72.  that F.A.F. LLC had **1)** a legal duty of care imposed upon them by RESPA and FDCPA, **2)** and the defendants breached that legal duty by their absolute non-compliance, **3)** and due that non-compliance I have been injured **4)** in the sum of $5, 564.38; $709.14 Check #128, which defendants obtain through Fraud, deceit, fear, extreme duress and threat of foreclosure on my home,

## Fraud:

**"The elements of actual fraud under New York law are false representation, scienter, materiality, expectation of reliance, justifiable reliance and damage."** *Congress Fin. Corp. v. John Morrell & Co., 790 F.Supp 459,469 (S.D.N.Y. 1992) (citation omitted)."*

**"plaintiff must allege that defendant made a false representation, that the defendant knew of the falsity (scienter), that the defendant acted with intent to defraud, and that plaintiff reasonably relied on the false representation, and damages."** *Marcus v. AT &T Corp., 138 F. 3d 46, 63 (2d Cir. 1998) (citations omitted)*

**Rule 9(b) states in relevant part that "i[n] all averments of fraud or mistake, the circumstance constituting or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to meet this burden, the complaint must: '"(1) specify the**

statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" **Shields v. Citytrust Bancorp. Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12F.3d 1170, 1175 (2d Cir. 1993))**

73. that every statement by F.A.F. LLC made, pursuant to a demand for payment after the Lawful Notice, dated Aug. 26, 2010, are all false, as the Aug. 26, 2010 Lawful Notice states in pertinent part, but not limited to, "**9. that from this juncture, of Lawful Notification/Affidavit, any act on the part of First American Funding to demand payments on this DISPUTED DEBT must be considered, an act, willing and knowingly, to illegally procure payments on this DEBT IN DISPUTE by fraudulent and illegal means, as upon Lawful Notice it is incumbent upon the notified party to, with all due and necessary diligence, investigate the validity of the content of said notice, less at a later date be found to have intentionally, by proof of such notice, moved unlawfully, [fraudulently]**"

74. that **1) the false representations made by F.A.F. LLC were that they intended to comply with and abide by RESPA and FDCPA** **2)** that **defendants knew** they would not comply with and obey the laws aforesaid as they did not, and ignore every Lawful Notice which I sent and they received (All Lawful Notices sent by Registered Return Receipt Mail)(**Ex. AA**) **3)** that **my expectation of reliance** was base on the defendants knowing the law which they quoted and referred to in their letters and that they knew they were suppose to comply with, or be subject to the legal penalties inherent in said laws for such disobedience **4)** that I was **justified in my reliance** in defendant's false representations that at some point they would come into compliance with the law, as I can not fathom any

21

business professionals having a desire to go to court and face charges for deliberate noncompliance where they should and could very easily comply  5) that I was damaged in the amount of  $5, 564.38; $709.14 by defendants false representation,

75. that **specifically defendant stated falsely 1)** in item  "2) if there is a reason to dispute the debt, or any portion thereof, you must notify First American Funding, LLC in writing within 30 days of this notice. Other wise, First American Funding, LLC will consider this debt valid" **2)** stated by **Maria Green, 3)** by **Notice of Intention to Foreclose, no loan number given,** dated **Sept. 13, 2010, 4)** and said statement is patently false because I had already sent a **3rd Lawful Notice!/Affidavit,** dated **Aug. 26, 2010 disputing the debt** which notified her "9. that **from this juncture, of Lawful Notification/Affidavit, any act on the part of First American Funding to demand payments on this DISPUTED DEBT must be considered an act, willingly and knowingly, to illegally procure payments on this DEBT IN DISPUTE by fraudulent and illegal means,"** 5) the **materiality** of the false statement is that it acknowledges my legal right to dispute the debt and the correlative duty imposed upon them by the law to comply with the law expressly pursuant to that right and correlative legal duty **6)** my **expectation of reliance** on the false statement is squarely based on the fact that it is the law and it acknowledges said law and was suppose to opened the door for legal dialogue pursuant to my lawful dispute **7)** I was **justified in relying** on the false representation as it was based on the law and I should be able to rely on the law to be actuated at some point in time short of litigation **8)** the **damage** I incurred was $5, 564.38; $709.14,

76. that the above "item 2)" of Marie Greens Sept. 13, 2010 Notice of Intention to Foreclose was repeated in a Notice of Default and Right to Cure, RE: **FA Loan**

**#R070101000-RC**, dated April 2, 2011, sent by Maria Green, which I responded to 6 days later, **April 8, 2011** by **5th Lawful Notice** "Dispute of Debt" 2nd Qualified Written Request, as it **repeats the 4th Lawful Notice, dated Sept. 18, 2010**. Maria Green did not respond nor any one else from F.A.F.LLC,

77. **that specifically defendants stated falsely 1)** that Eric Heinsler was their attorney/lawyer, **2)** stated by Ira Bailey, Maria Green, Sonia LaRiccia **3)** on the phone **4)** and said statement was fraudulent because Eric Heinsler is a Paralegal and is not F.A.F. LLC attorney or lawyer, **5)** the materiality of the statement is that defendants qualified legal expert ,lawyer, could have legally deciphered what the defendants stated emphatically they could not, and determined, legally, the significance or insignificance of the contents of the OCC Nov. 2, 2010 resolution and stopped the Foreclosure process and address the dispute **6)** my expectation of reliance is that defendants presented themselves as professionals operating by way of law, and why would professionals lie about a fact easily proved or disproved by my simply asking Eric Heinsler if he was a lawyer or their attorney **7)** I was justified in my reliance as again the false statement was made pursuant to the law, as I was supposedly given " (B)(ii) the name and number of an individual employed by…the servicer who can provide assistance to the borrower"

78. that F.A.F. LLC committed a fraud, because I relied upon the false representation made by the defendants that their intent was to "play by the rules," and act in "good faith," pursuant to the law, as they quoted RESPA and requirements of FDCPA in their letters showing that they were aware of their legal duties and responsibilities pursuant to RESPA and FDCPA and falsely represented that they would fulfill those legal obligations,

but did not, and knew they would not as they never responded, as demanded by law, to any of my Lawful Notices,

79. that F.A.F. LLC has started the cycle of fraud again in their April 2, 2011 "NOTICE OF DEFAULT AND RIGHT TO CURE" stating again in item no: 2. "if there is any reason to dispute the debt, or any portion thereof, you must notify First American Funding, LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated." F.A.F. LLC having already shown that they do not intend to comply or respond to said mandate and are only proffering another artifice to fraudulently give the appearance of intent to comply, with only the illegal procurement of another round of extortion payments in mind,

80. that I relied upon those false representations, above mentioned but not limited to, which never came to fruition, , to my detriment and damage, and was I defrauded by the defendants in the sum of $5, 564.38; $709.14,

81. that **F.A.F. LLC was notified in my 3ʳᵈ Lawful Notice on Aug 26, 2010 (Ex. I)** that "9. that **from this juncture, of Lawful Notification/Affidavit, any act on the part of First American Funding to demand payments on this DISPUTED DEBT must be considered, an act, willingly and knowingly, to illegally procure payments on this DEBT IN DISPUTE by fraudulent and illegal means, as upon Lawful Notice it is incumbent upon the notified party to, with all due and necessary diligence, investigate the validity of the content of said notice, less at a later date be found to have intentionally, by proof of such notice, moved unlawfully,"** and thus the aforesaid is here submitted as " proof " of the intent of the defendants to in fact defraud me of my property, either money or my real property, and in spite of said notice I still relied on the

fact that perhaps F.A.F. LLC knew or was relying on some portion of the law I knew not, as they are qualified expert professional servicers and debt collectors,

82. that demands for payment sent by defendants for payment even after the 3rd Lawful Notice, dated Aug. 26, 2010, but not limited to, are: **1)** Sept. 13, 2010, Notice of Intention to Foreclose; **2)** Sept. 21, 2010, bill **(Ex. Y)**; Oct. 20, 2010, bill **(Ex. Y-1)**; **3)** Nov. 22, 2010 letter "you could lose your home"; **4)**Dec. 27, 2010, bill **(Ex.Y-2)**; Jan. 23, 2011, bill **(Ex.Y-3)**; **5)** April 2, "Notice of Default Right to Cure"; **6)** April 6, 2011, bill **(Ex Y-4)**; **7)** April 27, 2011 bill **(Ex. Y-5)**,

## DAMAGES

83. that the Frequency and Persistence of Noncompliance on the part of the defendants was 100%, and was virulent, unnerving, oppressive, negligent, fraudulent and 100% intentional,

84. that in light of the above facts stated and affirmed I respectfully demand payment of actual damages of $5, 564.38, and $709. 17 April 27, 2011 payment made under protest check #128; $350 court filing fees; any additional damages the court may deem appropriate due the pattern of noncompliance; and damages for each of the violation of RESPA which are 7 in number or $14,000 ($2000 for each violation) and the maximum damages for the 6 violations of FDCPA, as pursuant to all violations, defendants have shown a blatant disregard and absolute disdain for the law, as best illustrated by defendant Ira Bailey stating "I don't have to follow the rules you do,"

85. and that in light of the above facts stated and affirmed I respectfully demand damages for pain and suffering of $1,000,000 as the defendants have acted deliberately,

maliciously, knowingly, willingly, oppressively, repeatedly, negligently and fraudulently, causing in me extreme anxiety, duress, fear, nervousness, worry and many sleepless nights, worried that F.A.F. LLC might not accept my payments under protest and just foreclose illegally under the guise of not having received the purported "required loan payments," as defendants have shown themselves to be unscrupulous insidious, callous, obscene, profane and unrelenting in their illegal scheme to either collect illegal payments from me or to illegally foreclose on my home without ever having to respond to my Lawful Notices of Dispute of Debt or qualify their actions by or through any lawful means.

Respectfully submitted,

"All Rights Reserved'

I AM James S. Hawkins-El III, A Living Soul,

Free National Citizen of The United States of America, The People.

MARC KASSMAN
Notary Public, State of New York
No. 01KA6138964
Qualified in Queens County
Commission Expires Dec. 27, 20__

James S. Hawkins-El III

c/o 159 Bch 97th St.

Rockaway Bch, NY 11693

Tel. (718) 945-6516

# EX. AA

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FIRST AMERICAN FUNDING LLC
MARIA GREEN, LOSS
MITIGATION SPECIALIST.
318 MAIN ST SUITE 201
MILLBURN, NJ 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Tina Pope_
B. Received by (Printed Name)  Tina Pope
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7008 1830 0000 8302 9340

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ASSET MANAGER, BRANDON BRADLEY
FIRST AMERICAN FUNDING
318 MAIN ST. SUITE 201
MILLBURN, NJ 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Tina Pope_   ☐ Agent   ☐ Addressee
B. Received by (Printed Name)  TINA POPE
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7010 1060 0001 1387 1424

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:  MARIA GREEN
LOSS MITIGATION SPEC.
FIRST AMERICAN FUNDING
318 MAIN ST. SUITE 201
MILLBURN, N.J. 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   ☐ Agent   ☐ Addressee
B. Received by (Printed Name)  Saireso
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from sender)
7010 1060 0001 1387 1431

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

A BAILEY "VICE PRESIDENT"
ATTN:
FIRST AMERICAN FUNDING LLC"
318 MAIN ST. SUITE 201
MILLBURN N.I. 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Tina Pope_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
TINA POPE

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)
7010 1670 0002 0183 477b

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MARIA GREEN, "LOSS
MITIGATION SPECIALIST,"
RA BAILEY "VICE PRESIDENT,"
FIRST AMERICAN FUNDING LLC
318 MAIN ST. SUITE 201
MILLBURN N.T. 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Tina Pope_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
TINA POPE

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)
7010 0780 0000 7753 2638

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ASSET MANAGER: BRANDON
BAILEY
FIRST AMERICAN FUNDING
318 MAIN ST. SUITE 201
MILLBURN N.J. 07041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Tina Pope_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
TINA POPE

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)
7010 1060 0001 1387 1493

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  Tina Pope
TINA POPE
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

NYC DEPT. OF FINANCE
OFFICE OF THE CITY REGISTER
144-06 94th ST.
JAMAICA, NY 11435

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7010 1060 0001 1387 1442
7010 1060 0183 1473

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

ATT N:
IRA BAILEY, VICE PRESIDENT
FIRST AMERICAN FUNDING LLC
318 MAIN ST. SUITE 201
MILLBURN NJ 07041

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7010 1670 0002 0183 1473

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN:
IRA BAILEY, V.P.
FIRST AMERICA FUNDING LLC"
318 MAIN ST. SUITE 201
MILLBURN NEW JERSEY 07041

A. Signature
X
TINA POPE
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7010 0780 0000 7254 2985

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# EX. A



**Comptroller of the Currency**
**Administrator of National Banks**

December 31, 2009

James Hawkins - Eli III
159 BCH 97th Street
Rockaway Beach NY 11693


Re:     Case# 01036677
        JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Dear Mr. Hawkins - Eli:

This letter acknowledges receipt of your correspondence concerning the above referenced bank.
The Office of the Comptroller of the Currency (OCC) is the federal regulator responsible for this
institution. Based upon your correspondence we have opened a case in the OCC's Customer
Assistance Group (CAG). Please make note of the case number listed above, and provide the
number on any future correspondence or contact with our office.

We have carefully reviewed the information you provided, and contacted the bank requesting a
response to your issues. In most instances, the bank will respond directly to you and copy us in
writing. Once you receive the bank's response, it is very important that you carefully review
their summary and actions taken, if any.

If the bank has satisfactorily addressed your issues and/or concerns no further action on your
part is required. If however, the bank failed to address any of your issues and/or concerns or you
disagree with their response, please contact the CAG in writing within 30 days of receipt of the
bank's letter. Please include in your reply the specific issues that the bank failed to address or, if
applicable, the reasons you disagree with the bank's assessment. Also, please include any
additional documentation that supports your position.

The OCC examines national banks to ensure their safe and sound financial condition and ensures
compliance with applicable banking laws, rules and regulations. The CAG was established to
assist customers who have questions or complaints involving national banks. For additional
information on the OCC and CAG please visit our internet site www.helpwithmybank.gov.

# EX. B

**RECORDATION REQUESTED BY:**

**First American Funding**

**WHEN RECORDED MAIL TO:**

**First American Funding**
**318 Main Street**
**Millburn, NJ 07041**



---

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# ASSIGNMENT of MORTGAGE

For value received, the receipt and sufficiency of which are hereby acknowledged, **JPMORGAN CHASE BANK, N.A.** **successor by merger to Washington Mutual Bank, FA,** hereby grants, assigns and transfers to **FIRST AMERICAN FUNDING** all beneficial interest under that certain **Mortgage** for **$100,000.00** dated **November 1, 2006**, and executed by **JAMES S HAWKINS EL III AND VALERIE GASTON**, and recorded as Instrument No. **2006000687042**, in Vol. **xx**, Page **xx**, on **December 14, 2006**, of Official Records in the County Recorder's office of **Queens**, State of **New York**, as described in said Mortgage and more commonly known as **159 Beach 97th St, Rockaway Beach, NY 11693.**

**LEGAL DESCRIPTION:** SEE ATTACHED LEGAL DESCRIPTION AS EXHIBIT "A"

JPMORGAN CHASE BANK, N.A., successor by merger to Washington Mutual Bank, FA sells to Assignee all of Assignor's right, title and interest in the Mortgage Loan, Deed of Trust/Mortgage and Note in "As Is" condition, with all faults, without any recourse to Assignor whatsoever and without any warranty expressed or implied, character or nature. JPMORGAN CHASE BANK, N.A., successor by merger to Washington Mutual Bank, FA., further makes no representations or warranties regarding the Mortgage loan, Note or Deed of Trust/Mortgage. Assignee confirms that it has taken such steps as it deems appropriate with respect to conducting due diligence with respect to the status and quality of the Mortgage Loan, Note and Deed of Trust/Mortgage.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said **Mortgage.**

Dated: August 3, 2010

JPMorgan Chase Bank, N.A.,

Launi Solomon, Representative of JPMorgan Chase Bank, N.A.,

Instrument prepared by: **Launi Solomon**
1820 E Sky Harbor Circle S Phoenix, AZ 85304

STATE OF **ARIZONA**
COUNTY OF **MARICOPA**

On 3 Aug 2010 before me, the undersigned Notary Public in and for said County and State, personally appeared, Launi Solomon personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by the signature(s) on the instrument the person(s), or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public in and for said County and State

PHXS-EL III

EX. C



Comptroller of the Currency
Administrator of National Banks

---

November 2, 2010

James S. Hawkins-El, III
159 Beach 97th Street
Rockaway Beach, NY  11693-1323

Re:  Case# 01036677 - JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Dear Mr. Hawkins-El:

The Office of the Comptroller of the Currency (OCC) is responding to your letter regarding the above-mentioned bank.  The focus of the OCC's review of consumer complaints against national banks is to determine whether the banks' actions are consistent with banking statutes, regulations or any policies that are applicable to nationally chartered banking institutions.

In your correspondence received from The Commonwealth of Massachusetts Office of the Attorney General and in additional correspondence from you, you claimed violations of the Real Estate Settlement Procedures Act (RESPA) and other regulations by the bank.  You disputed the debt owed on your home equity line of credit (HELOC) account.  You requested further assistance in this matter.

The OCC contacted the bank, which responded directly to you by letters dated February 8, 2010 and October 20, 2010.  Copies of the letters are enclosed for your review.  The bank informed you that it has thoroughly reviewed this matter and has previously sent you a written response on February 8, 2010 informing you of the bank's findings and stance on this issue.  The bank stated that its Legal Department reviewed the signed documents and determined that there is not any evidence that the bank or Washington Mutual Bank violated any covenants when transferring the account from Washington Mutual Bank to Chase.  The bank sent you a copy of the Agreement and Disclosure you signed on November 1, 2006 for your review; specifically Page Six, Section 18, which asserts the bank's rights as the new servicer of your account.  The bank informed you that while it regrets that you remain dissatisfied, its position remains unchanged.  Therefore, the bank will not respond to any additional correspondence about this issue.  The bank informed you that the balance of your HELOC is considered to be a valid debt.

---

The Customer Assistance Group's consumer complaint process is a service that is provided to customers of national banks.  Information provided within this letter is specifically related to an individual consumer complaint and should not be construed as either a legal opinion of the OCC or a supervisory action.  If you are not satisfied with resolution of your complaint, you may wish to consult legal counsel so as to preserve your rights.

Case# 01036677
November 2, 2010
Page 2

You were advised to contact Tasha Schroeder at 1-888-310-7995, extension 3603 if you have any further questions.

For purposes of the Real Estate Settlement Procedure Act (RESPA) provisions regarding qualified written requests (QWRs), the term, "servicing," means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan. Further, the regulation indicates under that a servicer is responsible for the "servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." A QWR is defined as written correspondence that identifies the account of the borrower and includes "a statement of the reasons for the borrower's belief of the borrower that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." A servicer is charged with acknowledging the QWR within 20 days. Within 60 days, the servicer must make necessary corrections to the account, explain that the account is accurate, provide the information requested, or explain why the information requested is unavailable or cannot be obtained by the servicer.

We have reviewed your complaint and the bank's response. Based on the information provided, the bank has provided you with documentation and explained why it believes that additional information is unavailable. The adequacy of that information may be a factual dispute between you and the bank that we cannot address.

The OCC is an administrative agency and is not a trier of fact and cannot settle factual disputes. These matters involve determination of fact, which are more appropriately decided by a court of competent jurisdiction or a jury of your peers. Therefore, we must respectfully decline to offer you any further comment, statement, judgment or other positions about the merits of your present or remaining claims you believe you have against the bank.

Your dispute also involves provisions of your contract with the bank. We cannot intercede in a private party situation regarding the interpretation or enforcement of your contract. The OCC does not have the judicial power to interpret or enforce private contractual agreements. If you do not agree with or understand the bank's response and wish to pursue the issue, we can only suggest you consult with legal counsel.

The Customer Assistance Group's consumer complaint process is a service that is provided to customers of national banks. Information provided within this letter is specifically related to an individual consumer complaint and should not be construed as either a legal opinion of the OCC or a supervisory action. If you are not satisfied with resolution of your complaint, you may wish to consult legal counsel so as to preserve your rights.

Case# 01036677
November 2, 2010
Page 3

We trust this is responsive to your complaint. If we can assist you in the future, please do not
hesitate to contact our office.

Sincerely,

*Customer Assistance Group*

Enclosure

The Customer Assistance Group's consumer complaint process is a service that is provided to customers of national
banks. Information provided within this letter is specifically related to an individual consumer complaint and should
not be construed as either a legal opinion of the OCC or a supervisory action. If you are not satisfied with resolution
of your complaint, you may wish to consult legal counsel so as to preserve your rights.

Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050
Phone: (800) 613-6743, FAX: (713) 336-4301
Internet Address: www.HelpWithMyBank.gov

# EX. D

 **Washington Mutual**

# WaMu Equity Plus™
## AGREEMENT AND DISCLOSURE

Date: 11/01/2006
Loan Number:   0742069008

This WaMu Equity Plus(TM) Agreement and Disclosure ("Agreement") governs your home equity line of credit account (the "Credit Line") issued by Washington Mutual Bank (the "Bank") and secured by the property identified below. In this Agreement, the words "Borrower," "you" and "your" mean each and all of the persons who signs this Agreement. The words "we," "us" and "our" mean the Bank or any successor or assign. The "Effective Disbursement Date" means the date on and after which you may begin to receive credit advances ("advances") from the Credit Line. The word "Card" means each credit card that can be used to obtain advances on the Credit Line, whether in the form of purchase transactions, cash advances or otherwise. The "Maturity Date" is the date that is thirty (30) years following the Effective Disbursement Date. Our "business days" are Mondays through Fridays, but federal legal public holidays are excluded. You and we agree as follows:

**1.   Promise to Pay.** You promise to pay to us, or our order, all advances from the Credit Line plus all FINANCE CHARGES, fees, charges, expenses and other amounts required by the terms of this Agreement. All amounts outstanding under the Credit Line that are covered by the Fixed Rate Loan Option described in Section 24 below are sometimes referred to in this Agreement as "Fixed Rate Loans." All other amounts outstanding under the Credit Line are sometimes referred to in this Agreement as "Variable Rate Advances." If there is more than one of you, each is jointly and severally liable under this Agreement. Each Borrower alone may cancel the Credit Line, receive advances from the Credit Line and, except as stated below, take all actions with respect to the Credit Line. Each of you requests that we issue each Borrower a Card.

Your use of the Card at Automated Teller Machines ("ATMs") is subject to our rules relating to ATM transactions.

**2.   Credit Limit.** This Agreement covers a revolving line of credit in the amount of ____$100,000.00____ (the "Credit Limit"). During the Draw Period described below, you may obtain advances from the Credit Line up to the Credit Limit, repay any portion of the amounts advanced, and obtain additional advances up to the Credit Limit. If there is more than one of you, each of you alone has the right to borrow up to the full amount of the Credit Limit, and each of you is liable for all advances made to any of you. You agree not to request or obtain an advance that will make the Credit Line balance exceed the Credit Limit. We may, at our option, make advances in excess of the Credit Limit. At our request, you will immediately repay the amount by which the balance of the Credit Line exceeds the Credit Limit.

**3.   Security Instrument.** To secure the performance of your obligations under this Agreement, one or more of you is giving us a deed of trust, deed to secure debt, mortgage or other security agreement (the "Security Instrument") on real property located at:_____159 BEACH 97TH ST  ROCKAWAY BEACH, NY 11693-1323_____
and other property described therein (the "Property"). If the title to the Property is held by a trust, references in this Agreement to "you" and "your" shall include, with respect to the Property and as applicable, a person who is signing the Security Instrument as a trustee of the trust. The Security Instrument secures all advances and other amounts owed under this Agreement as well as after-acquired property located on or attached to the Property. You agree to perform all of your obligations under the Security Instrument. Regardless of the terms of any other security instrument that you have with us, no personal or real property, other than the Property, secures your obligations under this Agreement.

The Security Instrument contains the following provisions relating to certain sales and transfers of the Property:
The loan is personal to Borrower and the entire Debt shall be accelerated and become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by Borrower including, without limit, further encumbrance of the Property. A sale or other transfer of the Property or any interest therein by Borrower without the full payment of the Debt shall constitute an event of default hereunder.

You will perform on a timely basis all payment and other obligations under the terms of any other deed of trust, mortgage, deed to secure debt or other security agreements or leases on the Property, as well as under any note or other obligation the performance of which is secured by the same.

**4.   Draw Period and Post Draw Period; Payments.** You may obtain advances from the Credit Line within ten (10) years after the Effective Disbursement Date (the "Draw Period"). At our option, we may extend the Draw Period for up to one (1) additional period of ten (10) years. The period of time, if any, between the end of the Draw Period and the Maturity Date is the "Post Draw Period." If the Draw Period is for ten (10) years, the Post Draw Period will be for twenty (20) years. If the Draw Period is for twenty (20) years, the Post Draw Period will be for ten (10) years. During the Post Draw Period, if any, you will no longer be able to obtain advances from the Credit Line.

Payments for both Variable Rate Advances and any Fixed Rate Loans are due monthly. The payment due date (the "Payment Due Date") may be different for Variable Rate Advances and Fixed Rate Loans, and each Fixed Rate Loan may have its own Payment Due Date. The Payment Due Date will be stated in your periodic billing statement (the "Periodic Statement") or, if applicable, on any payment coupons that we provide you.

For Variable Rate Advances, your minimum monthly payment ("Minimum Payment") during both the Draw Period and any Post Draw Period will be equal to all accrued and unpaid FINANCE CHARGES, late fees, and other fees and charges described below, plus any past due amounts and any outstanding balance of your Credit Line in excess of your Credit Limit. Paying the Minimum Payments will not repay the principal that is outstanding on the Credit Line. You will be required to pay the entire outstanding balance of the Variable Rate Advances (together with all accrued and unpaid FINANCE CHARGES relating to the Variable Rate Advances and all other related amounts that you owe under this Agreement) in a single Balloon Payment on the Maturity Date. We are not obligated to refinance any amount due on the Maturity Date. Your payments for any Fixed Rate Loans are described in Section 24 below.

For both Variable Rate Advances and Fixed Rate Loans, the following shall apply to payments. Payments must be made in U.S. dollars. All payments shall be mailed, postage prepaid, to the address that appears on your Periodic Statement (or, if applicable, on any payment coupons that we provide you) for receipt of payments. Any payments that are not received on a business day, or that are received after 5:00 p.m. (prevailing Pacific Time) on a business day, will be treated as having been received on the next following business day. We can accept and apply any late or partial payments, or payments marked "Payment in Full" or similar statement, or with a request to apply a payment in a particular manner, to amounts you owe as set forth in this Agreement without liability on our part and without losing any of our rights under this Agreement. You will not make payments from funds obtained from the Credit Line or any other line of credit from the Bank or any of its affiliates.

You will be required to send us one payment for the Variable Rate Advances and an additional separate payment for each Fixed Rate Loan. Each payment will first be applied to accrued and unpaid periodic FINANCE CHARGES, then to any principal due, then

to other **FINANCE CHARGES**, then to other fees and charges, and then to the unpaid principal balance. If you make a payment but do not specify where it should be applied, we will apply the payment in our discretion to outstanding Fixed Rate Loan(s) and/or Variable Rate Advances.

**5.    Periodic FINANCE CHARGE; Daily Periodic Rate; ANNUAL PERCENTAGE RATE.**  The date on which periodic **FINANCE CHARGES** begin to accrue will depend upon the type of advance you obtain from the Credit Line. Periodic **FINANCE CHARGES** will begin to accrue from the date that we initiate a wire transfer, the date that you request an advance from one of our Financial Centers, the effective date of a Card transaction, the effective date of your withdrawal of funds from an ATM, the date that a Check (as defined below) is processed by us, the date of any increase to the balance of the Variable Rate Advances in accordance with section 14(c), section 24(k)(iii) or section 24(ll)(iii) below, the date that we prepare a check to fund a Fixed Rate Loan on the Effective Disbursement Date or, thereafter, on the effective date of the conversion of all or any portion of the Variable Rate Advances and/or one or more existing Fixed Rate Loans into a new Fixed Rate Loan and, for any other types of advances, the date the advance is made. Periodic **FINANCE CHARGES** will continue to accrue until all amounts subject to the periodic **FINANCE CHARGE** are paid in full. There is no free ride period that would allow you to avoid paying a periodic **FINANCE CHARGE** on advances from the Credit Line.

During both the Draw Period and any Post Draw Period, the periodic **FINANCE CHARGE** on the Variable Rate Advances for each billing period is a function of the Daily Periodic Rate (as described below) shown on your Periodic Statement, the Average Daily Balance (as described below) shown on your Periodic Statement, and the number of days in the billing period, as follows:

(a)  The Daily Balance of your Variable Rate Advances for each day of the billing period will be all Variable Rate Advances due at the beginning of that day, plus all new Variable Rate Advances (including, without limitation, any increase to the balance of the Variable Rate Advances in accordance with Section 14(c) , section 24(k)(iii) or section 24(ll)(iii) below), less all payments and credits relating to Variable Rate Advances received that day. Nothing in this Section 5 authorizes you to obtain advances from the Credit Line during the Post Draw Period.

(b)  The Average Daily Balance is the sum of the Daily Balances of all days in the billing period divided by the number of days in the billing period.

(c)  The **ANNUAL PERCENTAGE RATE** and Daily Periodic Rate may vary. Except as stated below, the **ANNUAL PERCENTAGE RATE** will be equal to the sum of the "Index" (as described below) plus a margin of __0.000__ percentage points (the "Margin"), and the Daily Periodic Rate will be equal to the **ANNUAL PERCENTAGE RATE** divided by 365 (366 in a leap year). The amount of the Margin stated above will be affected by how you decide to make payments on the Variable Rate Advances. You may decide whether to make payments on your Variable Rate Advances by making direct payments to us or by authorizing automatic loan payments from an account that you designate (which is our "Auto Pay" service). Your decision whether or not to authorize our Auto Pay service will not affect the availability of the Variable Rate Advances. If you authorize our Auto Pay service for the Variable Rate Advances, the Margin stated above will be discounted (that is, it will be reduced) by either __0.250__%, if the account you designate to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__ , or __0.000__%, if that account is maintained with a financial institution other than __WASHINGTON MUTUAL BANK__ . If you do not authorize our Auto Pay service initially, but subsequently do so, the discount will be put into effect as of a date that we selected. If you have not authorized our Auto Pay service, the initial Daily Periodic Rate that is in effect for the Variable Rate Advances is __0.022603__% (**ANNUAL PERCENTAGE RATE** of __8.250__%). If you have authorized our Auto Pay service and the account you designate to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__ , the initial Daily Periodic Rate that is in effect for the Variable Rate Advances is __0.021918__% (**ANNUAL PERCENTAGE RATE** of __8.000__%). If you have authorized our Auto Pay service and the account you designated to make the Auto Pay payments is maintained with a financial institution other than __WASHINGTON MUTUAL BANK__ , the initial Daily Periodic Rate that is in effect for the Variable Rate Advances is __0.022603__% (**ANNUAL PERCENTAGE RATE** of  __8.250__%).

Except as otherwise provided in this Section 5(c), the **ANNUAL PERCENTAGE RATE** and Daily Periodic Rate will change, beginning on the day following the Effective Disbursement Date on each day that the Index changes. The Daily Periodic Rate will never be more than __0.049315__% (corresponding to a maximum **ANNUAL PERCENTAGE RATE** of __18.000__%) and the Daily Periodic Rate will never be less than __0.000000__% (corresponding to a minimum **ANNUAL PERCENTAGE RATE** of __0.000__%). Increases in the Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** will increase your Minimum Payment and periodic **FINANCE CHARGES** and, if these rates are increased in the last billing period prior to the Maturity Date, then your Balloon Payment due on the Maturity Date will also increase.

☐ **Promotional Rates.** If this box is checked, then the initial Daily Periodic Rate will not be determined as described above in this Section 5(c), but instead will be __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%). These are called "Promotional Rates." However, if you receive Promotional Rates, you authorize our Auto Pay service for the Variable Rate Advances, and the account you designate to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__ , then the initial Daily Periodic Rate will be __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%). If you receive Promotional Rates, you authorize our Auto Pay service for the Variable Rate Advances, and the account you designate to make the Auto Pay payments is maintained with a financial institution other than __WASHINGTON MUTUAL BANK__ , then the initial Daily Periodic Rate will be __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%). If you did not authorize our Auto Pay service initially, but subsequently do so, the discount will be put into effect as of a date that we select. If you receive Promotional Rates, the Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** will change, as described above in this Section 5(c), beginning on __N/A__ .

If you have authorized our Auto Pay service for the Variable Rate Advances and thereafter the Auto Pay service for the Variable Rate Advances is terminated by you or us for any reason, the discount that you have received on the Margin for the Variable Rate Advances will be eliminated. Specifically, the Margin will increase on the day that the Auto Pay service is terminated by __0.250__% if the account designated to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__ or __0.000__% if that account is maintained with any other financial institution. If the account designated to make Auto Pay payments is changed from an account maintained at __WASHINGTON MUTUAL BANK__ to an account maintained at any other institution, the discount that you have received on the Margin for the Variable Rate Advances will be reduced. Specifically, the Margin will increase by __0.250__% on the day the account designated to make Auto Pay payments is changed to an account maintained at another financial institution. In any such event, the increase in the Margin will result in a simultaneous increase in the **ANNUAL PERCENTAGE RATE** (subject to any further increases or decreases that result from a change in the Index) for the Variable Rate Advances by the same amount (i.e., by __0.250__% or __0.000__%, as applicable), and the Daily Periodic Rate for the Variable Rate Advances will also be simultaneously changed to an amount that is equal to the new **ANNUAL PERCENTAGE RATE** divided by 365 (366 in a leap year).

If you are receiving Promotional Rates, and you have authorized our Auto Pay service for the Variable Rate Advances, and thereafter the Auto Pay service for the Variable Rate Advances is terminated by you or us for any reason, the Daily Periodic Rate will increase on the day of the termination to __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%), if the account designated to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__ , and the Daily Periodic Rate will increase on the day of the termination to __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%), if that account is maintained with any other financial institution. If the account designated to make Auto Pay payments is changed from an account maintained at __WASHINGTON MUTUAL BANK__ to an account maintained at any other financial institution, the Daily Periodic Rate will increase on the day of the change to __N/A__% (**ANNUAL PERCENTAGE RATE** of __N/A__%). Following the Promotional Rates period, the higher Margin, Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** described above

0742069008

will apply.

Following any termination of our Auto Pay service, the increased Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** will not be greater than the maximum Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** stated above. Increases in the Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** will increase your Minimum Payment and periodic **FINANCE CHARGES** and, if these rates are increased in the last billing period prior to the Maturity Date, then your Balloon Payment due on the Maturity Date will also increase.

(d)   The "Index" is the Prime Rate as most recently published by *The Wall Street Journal* in its "Money Rates" table. If more than one Prime Rate is identified in this table, the Index shall be the highest of such rates. If the Index, or any substitute Index, is no longer available, we will choose a new Index. The new Index will have a historical movement substantially similar to that of the prior Index, and the Margin will be changed so that the new Index plus the Margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the **ANNUAL PERCENTAGE RATE** in effect at the time the prior Index becomes unavailable (plus any increase in the Margin that results from any termination of the Auto Pay service or any change in the account designated to make Auto Pay payments, as described in Section 5(c)).

(e)   The Daily Periodic Rate may change within a single billing period. If only one Daily Periodic Rate is in effect during the billing period, the periodic **FINANCE CHARGE** for the billing period will be equal to the Average Daily Balance multiplied by the applicable Daily Periodic Rate, and then multiplying that amount by the number of days in the billing period. If there is more than one Daily Periodic Rate within a billing period, the periodic **FINANCE CHARGE** for the billing period will be calculated by: (i) calculating a periodic **FINANCE CHARGE** for each Daily Periodic Rate by first multiplying that Daily Periodic Rate by the Average Daily Balance, and by then multiplying that amount by the number of days that such Daily Periodic Rate is in effect during the billing period, and (ii) by then adding together the periodic **FINANCE CHARGES** that are so determined for each such Daily Periodic Rate.

The **ANNUAL PERCENTAGE RATE** for both the Variable Rate Advances and the Fixed Rate Loans do not include costs other than interest. The periodic **FINANCE CHARGE** and **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loans are described in Section 24.

**6.   Variable Rate Advances.**  Provided you are not in default and your right to obtain advances has not been terminated, suspended or cancelled, you may obtain Variable Rate Advances during the Draw Period on and after the Effective Disbursement Date. The Effective Disbursement Date shall be a date that we specify, which shall follow the expiration of any rescission period required by applicable law, our acceptance of this Agreement, and your meeting of all conditions for the Credit Line.  All advances, other than by Card transactions outside the United States, shall be in U.S. Currency. You may obtain Variable Rate Advances as follows:

(a)   Writing a preprinted check ("Check") that we supply to you for use with your Credit Line. The signature of only one Borrower is required for each Check.

(b)   Using the Card to effect purchases, obtain cash advances at authorized ATMs (using the separate Personal Identification Number ("PIN") that we will supply to each of you), obtain cash advances at other locations, or otherwise obtain advances.

(c)   Requesting an advance in person at any of our Financial Centers. You will need to provide acceptable identification to obtain an advance.

(d)   A wire transfer of funds to an account that you designate. Wire transfers are subject to our rules governing wire transfer transactions.

You authorize us to make available additional means of obtaining advances. Those advances will also be subject to this Agreement.

In addition, the balance of the Variable Rate Advances may be increased in accordance with Section 14(c), section 24(k)(iii) or section 24(l)(iii) below.

**7.   Minimum Advances and Other Limitations.**  Each Variable Rate Advance, other than a purchase transaction with a Card, must be not less than $100.00. We may, at our option, make Variable Rate Advances of less than $100.00. At our option, we may (but reserve the right not to) honor any requests for advances in the following circumstances:

(a)   Your credit privileges have been cancelled, suspended or terminated.

(b)   Your Credit Limit is currently exceeded or would be exceeded if we honored the advance requested.

(c)   Your Check is post-dated (written and presented before the date on the item) or stale dated (presented more than six (6) months after the date of the item).

(d)   Your Check bears a restriction or notation.

(e)   Your Checks have been reported lost or stolen or, if advances requiring a PIN have been authorized, you have reported that your PIN has been compromised.

(f)   You are in material default of this Agreement or would be so if we honored the advance request.

(g)   We receive conflicting instructions or demands from any of you.

(h)   You have asked us to prepare a payoff demand statement setting forth the amounts required to satisfy your obligations under this Agreement.

You agree to hold us harmless from and indemnify us against any claim or loss the payee or any other endorser or depositing or collecting bank may assert regarding such restrictions, notations or post or stale dated items. You further agree to indemnify and hold us harmless for any claim or loss relating to honoring or refusing to honor any instructions or demands which we believe may be conflicting.

Our liability, if any, for wrongful dishonor of an advance request is limited to your actual damages, shall not include consequential damages, and in no event will exceed the amount of the advance request.

Checks may be processed mechanically based on information encoded on the item. Checks not meeting our format and encoding specifications may not be honored. The signature on each Check should match the signature on file with us, however, we may not verify the signature if the item is processed mechanically. Subject to applicable law, we will only pay Checks that are presented to us by another financial institution. We do not "certify" Checks drawn on your Credit Line.

**8.   Illegal Transactions.**  You will not use any advance, the Card, a Check or other access device to engage in any Internet gambling or illegal transaction (including, without limitation, illegal gambling).  We are not responsible for preventing you from doing so.

**9.   Periodic Statement.**  As required by law, we will send you a Periodic Statement showing all new transactions since the prior Periodic Statement closing date and other information relating to the Credit Line. The Periodic Statements may be sent on other than a calendar month basis. We reserve the right to change the Periodic Statement closing date. We may choose not to return Checks along with your Periodic Statement.

**10.   FINANCE CHARGES and Other Fees and Charges at Closing.**  You agree to pay the following **FINANCE CHARGES** and other fees and charges, which will be charged to your Credit Line on the Effective Disbursement Date unless paid to us on or before that date. Periodic **FINANCE CHARGES** will begin to accrue immediately on these amounts if charged to your Credit Line.

0742069008

| FINANCE CHARGES | OTHER FEES AND CHARGES (Closing Costs) | |
|---|---|---|
| | Appraisal Service Fee | $318.00 |

**11. Additional FINANCE CHARGES.** You agree to pay the following additional FINANCE CHARGES:

(a) **Cash Advance Fee.** A cash advance fee FINANCE CHARGE of 2.00% of each cash advance obtained on the Card, or $2.00, whichever is greater.

(b) **Fee for Small Variable Rate Advance.** If, at our sole option, we elect to honor a request for a Variable Rate Advance of less than $100.00, a transaction FINANCE CHARGE of 4.00% of the amount of the advance. This FINANCE CHARGE will not be imposed for Card transactions.

(c) **Fee for Lien Subordination.** If, at our sole option, we agree to subordinate the lien of the Security Instrument, a transaction FINANCE CHARGE of ___$50.00 - $250.00___.

(d) **Wire Transfer Fee.** A wire transfer FINANCE CHARGE of ___$25.00___ for each advance that you initiate by a wire transfer.

(e) **Courier Service Fee.** A courier service FINANCE CHARGE of ___$30.00___ for each transmittal of documents that you request which we send by a delivery service.

**12. Additional Other Fees and Charges.** You agree to pay the following additional other fees and charges:

(a) **Annual Fee.** An annual fee of ___N/A___ ("Annual Fee"). The Annual Fee will be charged on the first anniversary of the Effective Disbursement Date and on every anniversary thereafter until the Maturity Date. The Annual Fee is nonrefundable and will be imposed regardless of the balance and status of the Credit Line.

(b) **Late Fee and Collection Charges.** In addition to our other rights upon default, if we do not receive the Minimum Payment on the Variable Rate Advances or any Fixed Rate Loans within ___fifteen (15)___ days after the Payment Due Date shown on your Periodic Statement (or, if applicable, on any payment coupon that we provide you), you will be charged a late fee of the greater of ___$15.00___ or ___2.000___% of the Minimum Payment. Upon your default under this Agreement, you will pay all of our reasonable costs and collection charges, whether or not there is a lawsuit, including, without limit, attorneys' fees and legal expenses, including without limit, for bankruptcy or civil proceedings, our efforts to modify or vacate an automatic stay or injunction, appeals, and any anticipated post-judgment collection services, and whether or not such are incurred by our employees or third parties.

(c) **Overlimit Fee.** An overlimit fee of ___$20.00___ for each advance from the Credit Line that causes you to exceed your Credit Limit.

(d) **Dishonored Payment Fee.** A fee of $20.00 if you make a payment on your Credit Line (including any payment on a Fixed Rate Loan) with a check, draft, or other item or transfer (including an Auto Pay service transfer) that is dishonored for any reason.

(e) **Stop Payment Fee.** A fee of $20.00 when you request a stop payment on a Check. A stop payment shall be effective for six (6) months (or, if applicable, such longer period as provided by law) and must be delivered to us in the manner prescribed by law or by method acceptable to us in our sole discretion and in sufficient time for us to act. If a stop notice expires, you must renew it as set forth above and you will be assessed an additional stop payment fee. There is no right to stop payment on transactions by use of a Card or other means of access other than a Check.

(f) **Cancellation Fee.** If you cancel the Credit Line during the first __36__ months following the Effective Disbursement Date, you will be charged a cancellation fee as follows:

If you cancel your Credit Line Account during the first 36 months following the Effective Disbursement Date, defined below, you will be charged a cancellation fee equal to .125% of the original line amount or $500.00, whichever is greater, plus an additional fee of $2,020.00 to reimburse us for any recording fee, documentary stamp, intangible tax, or similar fee that we incurred in connection with the recording of the Security Instrument for this Agreement. In any event, you may not cancel the Credit Line until you have paid in full all amounts owing under this Agreement.

(g) **Foreign Currency Transactions.** If you use the Card to make a purchase or obtain an advance in a foreign currency (the "transaction currency"), it will be converted by Visa International or MasterCard International (depending on which Card we issue from time to time) into U.S. Dollars (the "billing currency"). Visa International or MasterCard International, as applicable, will use the procedures set forth in its operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, the Visa International operating regulations state that the exchange rate between the transaction currency and the billing currency is: (i) a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives or (ii) the government-mandated rate in effect for the applicable central processing date, in each instance, plus or minus an adjustment determined by the card issuer. The exchange rate for the applicable central processing date may differ from the rate in effect on the transaction date or the posting date. Currently, the MasterCard International conversion procedures state that the exchange rate between the transaction currency and the billing currency is either a wholesale market rate or a government-mandated rate as of a date selected by MasterCard International, in each instance plus or minus an adjustment determined by the card issuer. The exchange rate used by MasterCard International may differ from the rate in effect on the transaction date or the posting date. Regardless of which Card is used, the exchange rate used may be the same as, greater than, or less than the rate that would be available through a financial institution in the country in which the purchase or advance occurred. We do not determine the exchange rate that is used and we do not add or subtract any adjustment to the exchange rate.

(h) **Reject Fee.** A reject fee of $20.00 if a Check or other advance request (other than for a Card transaction) is not honored for any reason.

(i) **Copy and Research Fees.** A copy fee of $1.00 per item and research fees of $10.00 per hour will be assessed if you request copies of Checks or other research relating to your Credit Line.

(j) **Release Fee.** A fee of $65.00 in connection with the release, discharge or reconveyance of the Security Instrument.

(k) **Other Institution Fees.** Fees imposed by other institutions if you use the Card to obtain cash advances through their ATMs.

**13. Loss or Theft.** Notify us if any unauthorized use of your Credit Line has occurred or may occur as a result of loss or theft of one or more of your Checks, Cards or other access device, or if you believe someone else knows your PIN. The best way to notify us is by calling us. Call us at **800-556-5678** (for TDD, call **800-735-2922**) or, if a different telephone number is stated in the Periodic Statement, call that number. You may also write us at the address stated in Section 19 below. You agree to reasonably assist us in determining the facts and circumstances relating to any unauthorized use of your Credit Line.

**14. Termination and Acceleration; Suspension of Advances and Reduction of Credit Limit; Other Remedies.**

(a) We may terminate your Credit Line and require you to pay us the entire outstanding balance of the Credit Line (including the outstanding balance of any Fixed Rate Loans), together with all other fees, charges and amounts owing under this Agreement or the Security Instrument, in one payment, if any of the following happen:

(i) You commit fraud or make a material misrepresentation at any time in connection with the Credit Line. This can include, for example, a false statement about your income, assets, liabilities or any other aspect of your financial condition.

(ii) You do not meet any of the repayment terms of this Agreement.

(iii) Your action or inaction adversely affects the Property or our rights in the Property. This can include, for example, failure to maintain required insurance or pay taxes on the Property; waste or destructive use of the Property which impairs our security; death of the last Borrower; death of all but one Borrower which impairs our security; transfer of title or sale of the Property without our permission; permitting the creation of a senior lien on the Property; foreclosure by the holder of a prior lien on the Property; or use of the Property for an illegal purpose that subjects the Property to seizure.

If we terminate the Credit Line, no additional advances will be made and the entire outstanding balance of the Credit Line (including the outstanding balance of any Fixed Rate Loans) will be immediately due and payable without prior notice, except as may be required by law, and you agree to pay immediately such amount plus any other amounts due under this Agreement.

Failure to meet the repayment terms of any portion of the Credit Line, such as for Fixed Rate Loans or for Variable Rate Advances, will be considered failure to meet the repayment terms of the entire Credit Line, and this will give us the right to demand the immediate repayment of the entire outstanding balance of the Credit Line and to exercise any of our other rights under this Agreement. Likewise, payment of only a portion of the amount required under the repayment terms of this Agreement will not satisfy your repayment obligations for the entire Agreement. If a partial payment is made, we reserve the right to accept the payment and apply it to the outstanding balance of the Credit Line in accordance with Section 4 without waiving our right to demand immediate payment of the entire outstanding balance of the Credit Line or to exercise any of our other rights under this Agreement.

(b) In addition to any other rights we may have, we can suspend additional advances (including any Fixed Rate Loans) or reduce your Credit Limit during any period in which any of the following are in effect:

(i) The value of the Property declines significantly below the value as determined by us at the time you applied for your Credit Line. This includes, for example, a decline such that the difference between the Credit Limit and the available equity is reduced by fifty percent (50.00%), and may include a smaller decline depending on individual circumstances.

(ii) We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances.

(iii) You are in default of a material obligation of this Agreement. We consider all of your obligations to be material. Categories of material obligations include, for example, the events described above permitting us to terminate, obligations and limitations relating to your receipt of advances, obligations concerning maintenance or use of the Property, obligations to perform the terms of the Security Instrument or any other deed of trust, mortgage, deed to secure debt or other security agreement or lease on the Property (and to perform on any notes or other obligations secured by the same), obligations to notify us and to provide documents and information to us (such as updated financial information), and obligations to comply with applicable law (such as zoning restrictions).

(iv) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(v) The priority of our security interest in the Property is adversely affected by government action to the extent that the value of the security interest is less than 120.00% of the Credit Limit.

(vi) We have been notified by a government authority that continued advances may constitute an unsafe and unsound business practice.

(vii) If the maximum **ANNUAL PERCENTAGE RATE** stated in Section 5(c) above has been reached.

Regardless of any action that we take, all other terms of this Agreement will remain in effect and be binding upon you.

(c) If, at any time, we have the right to terminate your Credit Line under Section 14(a) above, we may, at our sole option and without prior notice to you, then or thereafter convert any or all of your Fixed Rate Loans (including both the unpaid principal balance of the Fixed Rate Loans plus all accrued and unpaid **FINANCE CHARGES**) to the balance of your Variable Rate Advances, which will then accrue **FINANCE CHARGES** in accordance with Section 5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances. No exercise of this right to convert and nothing in this Section 14(c) shall constitute an election of remedies or a waiver of any of our rights under the remaining provisions of this Section 14, the remainder of this Agreement, the Security Instrument, or at law or in equity.

(d) Any Borrower may cancel the Credit Line or suspend the right to obtain advances by sending a written notice of cancellation or suspension to the address stated in Section 19 below. The notice must identify the account number of the Credit Line and be signed by at least one Borrower. The notice will be effective when it has been received and accepted by us. If the right to obtain advances is suspended at the request of a Borrower, advances will be reinstated only following our receipt and approval of a written request for reinstatement that has been signed by each of you.

(e) If the Credit Line is cancelled, suspended or terminated, you agree not to attempt to write or deliver any Checks, use a Card or any other access device, or otherwise obtain advances. You will return all Cards and unused Checks to us. You remain liable for any use of Checks, Cards or other access devices, and any advances taken even after any cancellation by you or us, termination or suspension. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or release of the Security Instrument for a reasonable period of time to enable us to post to your Credit Line any advances that you have received.

Our rights under this Agreement shall be in addition to any other rights we may have under the Security Instrument or at law or in equity.

**15.  Delay in Enforcement; Corrections.** To the extent permitted by law, we may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right;  and if we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. We may correct any inaccuracies that we find in the Credit Line.

**16.  Presentment.** You waive any statutes of limitations, and any legal requirements of presentment, demand, protest, notice of dishonor and notice of protest of this Agreement.

**17.  Credit Information.** You will provide us with a current financial statement, a new credit application, or both, at any time upon our request. We may obtain credit reports on you at any time for the purpose of reviewing or collecting your Credit Line. You authorize us to release information to others (such as credit bureaus, merchants, other financial institutions and any of our

0742069008

affiliate companies) about our transactions or experiences with you. **WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

**18. Transfer and Assignment.** Without prior notice to or approval from you, we reserve the right to sell or transfer this Agreement, the Credit Line, and our obligations under this Agreement to any other person. Your rights under this Agreement belong to you only and may not be transferred, assumed or assigned. Your obligations, however, are binding upon your heirs and legal representatives.

**19. Notices.** Except as otherwise provided in this Agreement, notices must be in writing. Notice to any of you shall be deemed notice to all of you. Notices shall be deemed given when deposited in the U.S. Mail, postage prepaid first class mail, or when delivered in person, or sent by registered or certified mail, or by nationally recognized overnight carrier. Notice to you shall be sent to your last known address in our records for the Credit Line. Notice to us must be sent to: Consumer Loan Servicing,

    WASHINGTON MUTUAL BANK
    CONSUMER LENDING – BR2CLFL
    PO BOX 6668
    LAKE WORTH, FL 33466
or, if a different address is stated in the Periodic Statement, to that address. Any party may change its address for receipt of notices by giving notice of the same, as set forth herein, to the other parties. You agree to notify us immediately if you change your name, address or employment, or if any of you dies, is declared incompetent or is the subject of a bankruptcy or insolvency proceeding.

**20. Tax Consequences.** You should consult your own tax advisor regarding the tax deductibility of interest and charges under this Agreement.

**21. Amendment.** In addition to other changes described in this Agreement, we may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line, or if the change is insignificant.

**22. Governing Law.** This Agreement and your Credit Line will be governed by and interpreted in accordance with the laws of the United States of America and, to the extent that such laws are not applicable, with the internal laws of the State of _____New York_____ (without giving effect to any choice of law rule that would cause the application of the laws of any other jurisdiction to the rights and duties of the parties). Interest shall be charged at rates allowed to any class of lender by the laws of the State of _____New York_____.

**23. Interpretation.** The names given to sections or paragraphs in this Agreement are for convenience and shall not be used to interpret this Agreement. This Agreement, the Periodic Statements and, if applicable, any payment coupons that we provide you are the best evidence of your agreement with us. If any provision of this Agreement, the Periodic Statements, or any such payment coupons is found not to be valid or enforceable, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of such provision or the remaining provisions of that document, which provisions shall continue to be binding, valid and enforceable.

**24. Fixed Rate Loan Option.** You have the option (the "Fixed Rate Loan Option") to obtain advances from your Credit Line in the form of Fixed Rate Loans as described in this Section. Except as stated below, the Fixed Rate Loans will be subject to a fixed Daily Periodic Rate and **ANNUAL PERCENTAGE RATE** and a fixed term. The following shall apply to the Fixed Rate Loan Option:

    (a) The Fixed Rate Loan Option may be exercised only during the Draw Period.

    (b) You may exercise the Fixed Rate Loan Option to obtain up to two (2) *Fixed Rate Loans* on the Effective Disbursement Date which, in the aggregate, may be any amount up to the then available portion of the Credit Limit. Thereafter, you may only (1) exercise the Fixed Rate Loan Option by converting all or any portion of (i) the outstanding Variable Rate Advances, and/or (ii) one or more existing Fixed Rate Loans, into a new Fixed Rate Loan in accordance with our procedures. Following the Effective Disbursement Date, you may not obtain a Fixed Rate Loan by obtaining an advance of new funds from the Credit Line.

    (c) Each Fixed Rate Loan may be for any amount, but the aggregate of all Fixed Rate Loans and outstanding Variable Rate Advances may not exceed your available Credit Limit.

    (d) The portion of the Credit Limit that is available to you for other advances will be reduced by the amount of each Fixed Rate Loan. Any repayment of the principal amount of a Fixed Rate Loan during the Draw Period will restore the available Credit Limit by an equal amount.

    (e) You may exercise a Fixed Rate Loan Option only if no defaults exist under the terms of this Agreement or the Security Instrument, your right to obtain advances has not been terminated, suspended or cancelled, and you sign all documents required by us. You may not obtain more than two (2) Fixed Rate Loans in any one (1) calendar year period, and may not have more than five (5) Fixed Rate Loans outstanding at any time. You may not have outstanding at any time more than one Fixed Rate Loan that provides for either a "Special Term and Amortizing Minimum Payment" as described in section 24(k)(iii) below or a "Special Term and Interest Only Minimum Payment" as described in Section 24(k)(iv) below. Notwithstanding any other provisions of this Section 24, we may convert any or all of your Fixed Rate Loans to the balance of your Variable Rate Advances in accordance with Section 14(c) above.

    (f) You will be required to pay a ___$50.00___ transaction fee **FINANCE CHARGE** for each Fixed Rate Loan that you receive, other than for the first Fixed Rate Loan or any Fixed Rate Loan taken on the Effective Disbursement Date. You may pay this fee prior to the making of the Fixed Rate Loan or it will be added to the principal balance of the Fixed Rate Loan.

    (g) If you wish to obtain a Fixed Rate Loan after the Effective Disbursement Date, you may initiate the process by visiting any of our Financial Centers or by calling 888-900-8738 toll-free (for TDD, call 800-735-2922) or, if a different telephone number is stated in the Periodic Statement, by calling that telephone number.

    (h) Except as stated below, the **ANNUAL PERCENTAGE RATE** that will apply to each Fixed Rate Loan will be equal to the sum of the Index that is in effect on the day you exercise the Fixed Rate Loan Option to obtain that Fixed Rate Loan plus a margin of ___14.0___ percentage points (the "FRLO Margin").

The amount of the FRLO Margin stated above will be affected by how you decide to make payments on the Fixed Rate Loan. At the time you exercise the Fixed Rate Loan Option, you may decide whether to make payments on your Fixed Rate Loan by making direct payments or by authorizing our Auto Pay service. Your decision whether or not to authorize our Auto Pay service will not affect the availability of the Fixed Rate Loans. If, at the time you exercise the *Fixed Rate Loan Option*, you authorize our Auto Pay service for the Fixed Rate Loan, the FRLO Margin stated above will be decreased by either ___0.250___ %, if the account you designate to make the Auto Pay payments is maintained with ___WASHINGTON MUTUAL BANK___ , or ___0.125___ %, if that account is maintained with a financial institution other than ___WASHINGTON MUTUAL BANK___ . If you do not authorize our Auto Pay service for a Fixed Rate Loan when you exercise the Fixed Rate Loan Option, but you subsequently do so, the **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loan will not be decreased.

0742069008

If the Index, or any substitute Index, becomes unavailable, we will choose a new Index. The new Index will have a historical movement substantially similar to that of the prior Index, and the FRLO Margin will be changed so that the new Index plus the FRLO Margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the **ANNUAL PERCENTAGE RATE** that would have been in effect at the time the prior Index becomes unavailable. The new FRLO Margin will be determined without any discount for the use of our Auto Pay service, but the **ANNUAL PERCENTAGE RATE** will be discounted for subsequent Fixed Rate Loans where Auto Pay is selected, as described in this Section 24(h) above.

The Daily Periodic Rate for the Fixed Rate Loan will be equal to the **ANNUAL PERCENTAGE RATE** divided by 365 (366 in a leap year). The **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loan will not be greater than the maximum **ANNUAL PERCENTAGE RATE** stated in Section 5(c) above. The periodic **FINANCE CHARGE** that will apply to the Fixed Rate Loan for each billing period will be accrued and calculated daily based upon the outstanding principal balance of the Fixed Rate Loan each day. The outstanding principal balance of the Fixed Rate Loan for each day of the billing period is calculated by starting with the beginning principal balance that day and then subtracting any payments or credits relating to the Fixed Rate Loan received that day. The periodic **FINANCE CHARGE** that will apply to the Fixed Rate Loan for each billing period will be determined by first multiplying the applicable Daily Periodic Rate by the outstanding principal balance of the Fixed Rate Loan for each day of the billing period, and then adding together the resulting amounts. If more than one Daily Periodic Rate is applicable to a Fixed Rate Loan in the same billing period then, for purposes of the preceding sentence, each Daily Periodic Rate will be multiplied by the outstanding principal balance of the Fixed Rate Loan for each day of the billing period that the Daily Periodic Rate is in effect. As of __11/01/2006__, if you have not authorized our Auto Pay service, the Daily Periodic Rate that would be in effect for the Fixed Rate Loan is 0.049315% (**ANNUAL PERCENTAGE RATE** of __18.0__%). As of __11/01/2006__, if you have authorized our Auto Pay service and the account you designate to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__, the Daily Periodic Rate that would be in effect for the Fixed Rate Loan is 0.049315% (**ANNUAL PERCENTAGE RATE** of __18.0__%). As of __11/01/2006__, if you have authorized our Auto Pay service and the account you designate to make the Auto Pay payments is maintained with a financial institution other than __WASHINGTON MUTUAL BANK__, the Daily Periodic Rate that would be in effect for the Fixed Rate Loan is 0.049315% (**ANNUAL PERCENTAGE RATE** of __18.0__%). You will be deemed to exercise a Fixed Rate Loan Option when you sign the required documentation at the time that you sign this Agreement or, thereafter, at one of our Financial Centers, or when you call the toll-free telephone number described in Section 24(g) above and provide us with all required information.

    (i) We may, at our sole discretion and without prior notice, provide a Fixed Rate Loan at a discounted **ANNUAL PERCENTAGE RATE** (a "Current Rate"), that is, an **ANNUAL PERCENTAGE RATE** that is lower than the sum of the Index plus the FRLO Margin as set forth above. If we do so, the Daily Periodic Rate will be equal to the Current Rate divided by 365 (366 in a leap year). If, at the time you exercise the Fixed Rate Loan Option, we provide you with a Current Rate and you authorize our Auto Pay service on the Fixed Rate Loan, the Current Rate will be reduced by either __0.250__%, if the account you designate to make the Auto Pay payments is maintained with __WASHINGTON MUTUAL BANK__, or __0.125__%, if that account is maintained with a financial institution other than __WASHINGTON MUTUAL BANK__. If you do not authorize our Auto Pay service for a Fixed Rate Loan at a Current Rate when you exercise the Fixed Rate Loan Option, but you subsequently do so, the **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loan will not be decreased. If we provide a Fixed Rate Loan at a Current Rate, we are not obligated to offer a Current Rate on any subsequent Fixed Rate Loans.

    (j) If you authorized our Auto Pay service for the Fixed Rate Loan at the time you exercised the Fixed Rate Loan Option, and thereafter the Auto Pay service for the Fixed Rate Loan is terminated by you or us for any reason, the **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loan will increase on the day that the Auto Pay service is terminated by __0.250__% if the account designated to make the AutoPay payments is maintained with __WASHINGTON MUTUAL BANK__, or __0.125__% if that account is maintained with any other financial institution. If the account designated to make Auto Pay payments is changed from an account maintained at __WASHINGTON MUTUAL BANK__ to an account maintained at any other financial institution, the **ANNUAL PERCENTAGE RATE** for the Fixed Rate Loan will increase on that date by __0.125__%. In any such event, the Daily Periodic Rate for the Fixed Rate Loan will be simultaneously increased to an amount that is equal to the increased **ANNUAL PERCENTAGE RATE** divided by 365 (366 in a leap year). In no event will the increased **ANNUAL PERCENTAGE RATE** be greater than the maximum **ANNUAL PERCENTAGE RATE** stated in Section 5(c) above.

    (k) You have the following choices regarding the term and Minimum Payment for a Fixed Rate Loan:

    (i) Standard Term and Fully Amortizing Minimum Payment. With this choice, you may determine the term of each Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option. The term of each Fixed Rate Loan shall be in increments of one (1) year. If the Fixed Rate Loan is up to $19,999.99 in amount, the term of the Fixed Rate Loan may be up to 120 months or until the Maturity Date, whichever is earlier. If the Fixed Rate Loan is for $20,000.00 or more in amount, and your Credit Line is classified by us as a first lien product (a "first lien product"), the term of the Fixed Rate Loan may be up to 360 months or until the Maturity Date, whichever is earlier. If the Fixed Rate Loan is for $20,000.00 or more in amount, and your Credit Line is classified by us as something other than a first lien product (a "non-first lien product"), the term of the Fixed Rate Loan may be up to 240 months or until the Maturity Date, whichever is earlier. Your Minimum Payment for the Fixed Rate Loan is the amount sufficient to repay the original principal balance of the Fixed Rate Loan, together with periodic **FINANCE CHARGES** at the applicable **ANNUAL PERCENTAGE RATE**, in full in substantially equal monthly installments during the scheduled term of the Fixed Rate Loan. The entire outstanding principal balance of the Fixed Rate Loan together with all accrued and unpaid **FINANCE CHARGES**, if not sooner paid, will be due and payable in full in a single payment on the last day of the scheduled term of the Fixed Rate Loan. We are not obligated to refinance this amount.

    (ii) Standard Term and Partially Amortizing Minimum Payment. With this choice, you may determine the term of each Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option. The term of each Fixed Rate Loan shall be in increments of one (1) year. If the Fixed Rate Loan is up to $19,999.99 in amount, the term of the Fixed Rate Loan may be up to 120 months or until the Maturity Date, whichever is earlier. If the Fixed Rate Loan is for $20,000.00 or more in amount, and your Credit Line is a first lien product, the term of the Fixed Rate Loan may be up to 360 months or until the Maturity Date, whichever is earlier. If the Fixed Rate Loan is for $20,000.00 or more in amount, and your Credit Line is a non-first lien product, the term of the Fixed Rate Loan may be up to 240 months or until the Maturity Date, whichever is earlier. Your Minimum Payment will be equal to the amount sufficient to repay the original principal balance of the Fixed Rate Loan, together with periodic **FINANCE CHARGES** at the applicable **ANNUAL PERCENTAGE RATE**, in full in substantially equal monthly installments during an amortization term (the "Amortization Term") that you will select before you obtain the Fixed Rate Loan. The Amortization Term must be for a period longer than the Maturity Date but not longer than (i) 120 months, if the Fixed Rate Loan is up to $19,999.99 in amount, (ii) 360 months, if the Fixed Rate Loan is for $20,000.00 or more in amount and your Credit Line is a first lien product, or (iii) 240 months, if the Fixed Rate Loan is for $20,000.00 or more in amount and your Credit Line is a non-first lien product. Each Amortization Term must be in increments of one year. In addition, you will be required to pay the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid **FINANCE CHARGES**, in a single Balloon Payment on the Maturity Date. We are not obligated to refinance this Balloon Payment.

    (iii) Special Term and Partially Amortizing Minimum Payment. This choice will only be available if you exercise the Fixed Rate Loan Option on or after __02/05/2006__ and on or before __02/05/2007__. With this choice, you may select a term of 3, 5, 7 or 10 years for the Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option. No other term is permitted for the Fixed Rate Loan. The term selected must not conclude on or extend beyond the Maturity Date. Your Minimum Payment will be equal to the amount sufficient to repay the original principal balance of the Fixed Rate Loan, together with periodic **FINANCE CHARGES** at the applicable **ANNUAL PERCENTAGE RATE**, in full in substantially equal monthly installments during an Amortization Term of thirty (30) years. At the conclusion of the term of the Fixed Rate Loan, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid **FINANCE CHARGES** and other fees, automatically will be transferred to the balance of your Variable Rate Advances, which will then accrue **FINANCE CHARGES** in accordance with Section 5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances.

(iv) Special Term and Interest Only Minimum Payment. This choice will only be available if you exercise the Fixed Rate Loan Option on or after ___04/23/2006___ and on or before ___02/05/2007___. With this choice, you may select a term of 3, 5, 7 or 10 years for the Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option. No other term is permitted for the Fixed Rate Loan. The term selected must not conclude on or extend beyond the Maturity Date. Your Minimum Payment will be equal to all of the unpaid periodic FINANCE CHARGES that have accrued on the outstanding principal balance of the Fixed Rate Loan at the applicable ANNUAL PERCENTAGE RATE. Your Minimum Payments will not repay any of the unpaid principal balance of the Fixed Rate Loan. At the conclusion of the term of the Fixed Rate Loan, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid FINANCE CHARGES and all other fees and charges relating to the Fixed Rate Loan, automatically will be transferred to the balance of your Variable Rate Advances, which will then accrue FINANCE CHARGES in accordance with Section 5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances. If you choose to pay only the Minimum Payments, then (A) the payments on your Variable Rate Advances may increase substantially following the conclusion of the term of the Fixed Rate Loan, and (B) the Balloon Payment due on the Maturity Date may increase substantially.

You must make your choices regarding a Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option for the loan in accordance with our procedures. You may make a different choice for each Fixed Rate Loan that you obtain.

We will notify you of the amount of the Minimum Payment for the Fixed Rate Loan. For any Fixed Rate Loan (other than one with a Special Term and Interest Only Minimum Payment), your first Minimum Payment may be for a period of less than one month and, if so, we may apply the excess amount of the payment to the outstanding principal balance of the Fixed Rate Loan, which may (depending on the term and payment choice that you make) reduce the amount of your final scheduled payment on the Fixed Rate Loan. Your Minimum Payment on each Fixed Rate Loan is in addition to the Minimum Payments that you must pay on any other Fixed Rate Loans and on the Variable Rate Advances.

(l) If you authorized our Auto Pay service for the Fixed Rate Loan at the time you exercised the Fixed Rate Loan Option, and thereafter the Auto Pay service for the Fixed Rate Loan is terminated by you or us for any reason, or if the account designated to make Auto Pay payments is changed from an account maintained at ___WASHINGTON MUTUAL BANK___ to an account maintained at any other financial institution, your Minimum Payment and ANNUAL PERCENTAGE RATE will increase. Your new Minimum Payment will be determined as follows:

(i) If the Fixed Rate Loan has a Standard Term and Fully Amortizing Minimum Payment, your new Minimum Payment will equal the amount sufficient to repay the outstanding principal balance of the Fixed Rate Loan that is anticipated to be unpaid at the time that the ANNUAL PERCENTAGE RATE increases, together with periodic FINANCE CHARGES at the increased ANNUAL PERCENTAGE RATE described in Section 24(j) above, in full in substantially equal monthly installments through the remainder of the scheduled term of the Fixed Rate Loan. The entire outstanding principal balance of the Fixed Rate Loan together with all accrued and unpaid FINANCE CHARGES, if not sooner paid, will be due and payable in full in a single payment on the last day of the scheduled term of the Fixed Rate Loan. We are not obligated to refinance this amount.

(ii) If the Fixed Rate Loan has a Standard Term and Partially Amortizing Minimum Payment, your new Minimum Payment will equal the amount sufficient to repay the outstanding principal balance of the Fixed Rate Loan that is anticipated to be unpaid at the time that the ANNUAL PERCENTAGE RATE increases, together with periodic FINANCE CHARGES at the increased ANNUAL PERCENTAGE RATE described in Section 24(j) above, in full in substantially equal monthly installments through the remainder of the scheduled Amortization Term. In addition, you will be required to pay the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid FINANCE CHARGES, in a single Balloon Payment on the Maturity Date. We are not obligated to refinance this Balloon Payment.

(iii) If the Fixed Rate Loan has a Special Term and Partially Amortizing Minimum Payment, your new Minimum Payment will equal the amount sufficient to repay the outstanding principal balance of the Fixed Rate Loan that is anticipated to be unpaid at the time that the ANNUAL PERCENTAGE RATE increases, together with periodic FINANCE CHARGES at the increased ANNUAL PERCENTAGE RATE described in Section 24(j) above, in full in substantially equal monthly installments through the remainder of the 30-year Amortization Term. At the conclusion of the term of the Fixed Rate Loan, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid FINANCE CHARGES, automatically will be transferred to the balance of your Variable Rate Advances, which will then accrue FINANCE CHARGES in accordance with Section 5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances.

(iv) If the Fixed Rate Loan has a Special Term and Interest Only Minimum Payment, your new Minimum Payment will be equal to all of the unpaid periodic FINANCE CHARGES that have accrued on the outstanding principal balance of the Fixed Rate Loan at the increased ANNUAL PERCENTAGE RATE described in Section 24(j) above. At the conclusion of the term of the Fixed Rate Loan, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid FINANCE CHARGES and all other fees and charges relating to the Fixed Rate Loan, automatically will be transferred to the balance of your Variable Rate Advances, which will then accrue FINANCE CHARGES in accordance with Section 5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances.

We will notify you of the amount of any change in the Minimum Payment for the Fixed Rate Loan.

(m) In the event of any conflict or inconsistency between the provisions of this Section 24 and the remaining provisions of this Agreement, the provisions of this Section 24 shall prevail. Except as otherwise provided in this Section 24, all remaining provisions of this Agreement shall apply to the Fixed Rate Loans in accordance with their terms.

## YOUR BILLINGS RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us in Case of Errors or Questions About Your Bill.* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your deposit account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive Your Written Notice.* We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

0742069008

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES**, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If we did not make a mistake, you may have to pay **FINANCE CHARGES** and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we can not collect the first $50.00 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases.* If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

    (a)   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

    (b)   The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant or if we mailed you the advertisement for the property or services.

By signing below, you agree to the terms of this Agreement and you acknowledge that you have read and received a copy of this Agreement.

**JAMES S HAWKINS EL III**

EX. E

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

August 9, 2010

Reference: R07101000-RC
159 Beach 97th St

Mr. James S Hawkins
159 Beach 97th St
Rockaway Beach, NY 11693

Next due :                    09/01/10
Payment :    $         226.39

Dear Mr. Hawkins,

This letter will serve to acknowledge that your loan was recently transferred from JP Morgan Chase Bank to the above referenced company. This is a normal business transaction and will not affect the terms and conditions of your mortgage documents. By now you should have received your good-bye letter from JP Morgan Chase Bank.

You will be receiving a monthly billing statement starting for September 2010. This statement will include the total amounts due for principal, interest, and any late or service fees. Please mail all payments to the above address as of the date stated in your good-bye letter. If you have already made your current monthly payment to the previous servicer please notify us immediately.

We look forward to servicing your loan in the coming years and making it easier for you to manage your home loan payments.

We are prepared to assist you in resolving your past due payments, as well as being available to discuss options and payment arrangements to help meet with your financial needs.

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (12 U.S.C 2605)

During the 60 day period following the effective date of transfer of the loan servicing, a loan payment received by your old servicer after its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer,

which includes your name and account number, and your reasons for the request. Not later than 60 days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of the section. You should seek legal advice if you believe your rights have been violated.

If you have any questions or concerns, we can be reached Mon-Fri from 8AM to 7PM EST TOLL FREE (866)533-6600.

Sincerely,

Brandon Bailey
Asset Manager

# EX. F

# THE PEOPLE OF THE UNITED STATES OF AMERICA
James S. Hawkins-El III, c/o 159 Bch 97th St. Rockaway Bch NY 11693

**First American Funding**
318 Main St. Suite 201
Millburn, NJ 07041
Asset Manager, Brandon Bailey

Re: Letters dated August 9, 2010

# LAWFUL NOTICE

**To:** Asset Manager, Brandon Bailey,

I AM **James S. Hawkins-El III**. I am in receipt of your letters, dated August 9, 2010, addressed to a **"Mr. James S Hawkins"** of whom I am not; further I do not have a "home loan" nor "Home Mortgage Loan payment" with JP Morgan Chase Bank as stated in your letters; additionally I have not received any "good-by letter" from JP Morgan Chase Bank as also stated in said letters.

Perhaps you have made a mistake in contacting me in this matter. Please check your records.

Thank you in advance for your sincere and diligent examination of the facts in this legal matter.

Your prompt professional response to this legal matter will be fully appreciated.

Respectfully,

"All Rights Reserved"

I AM James S. Hawkins-El III, A Living Soul,
**Free National Citizen of The United States of America, The People.**

# EX. G

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

August 19, 2010

Reference: R07101000-RC
159 Beach 97th St

Ms. Valerie Gaston
159 Beach 97th St
Rockaway Beach, NY 11693

| | | |
|---|---|---|
| Next due : | | 09/01/10 |
| Payment : | $ | 226.39 |

Dear Ms. Gaston,

This letter will serve to acknowledge that your loan was recently transferred from JP Morgan Chase Bank to the above referenced company.  This is a normal business transaction and will not affect the terms and conditions of your mortgage documents.  By now you should have received your good-bye letter from JP Morgan Chase Bank.

You will be receiving a monthly billing statement starting for September 2010. This statement will include the total amounts due for principal, interest, and any late or service fees. Please mail all payments to the above address as of the date  stated in your good-bye letter. If you have already made your current monthly payment to the previous servicer please notify us immediately.

We look forward to servicing your loan in the coming years and making it easier for you to manage your home loan payments.

We are prepared to assist you in resolving your past due payments, as well as being available to discuss options and payment arrangements to help meet with your financial needs.

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (12 U.S.C 2605)

During the 60 day period following the effective date of transfer of the loan servicing, a loan payment received by your old servicer after its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights.  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer,

which includes your name and account number,and your reasons for the request. Not later than 60 days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of the section. You should seek legal advice if you believe your rights have been violated.

If you have any questions or concerns, we can be reached Mon-Fri from 8AM to 7PM EST TOLL FREE (866)533-6600.

Sincerely,

Brandon Bailey
Asset Manager

# EX. H

# THE PEOPLE OF THE UNITED STATES

*James S. Hawkins-El III, c/o 159 Bch 97th St. Rockaway Bch, NY 11693*

First American Funding
318 Main St. Suite 201
Millburn, NJ 07041
Asset Manager, Brandon Bailey

Aug. 22, 2010

Re: Letter addressed to Valerie Gaston, dated Aug. 19, 2010

# 2ND LAWFUL NOTICE!

**ATTN:** Asset Manager, Brandon Bailey,

I AM James S. Hawkins-El III. I AM in receipt of your letter addressed to Valerie Gaston, dated Aug. 19, 2010, which is, verbatim, exactly the same letter, dated Aug. 9, 2010, sent to "James S Hawkins."

It is axiomatic that one having even the merest knowledge and insight into any legal matter, which one claims to have an interest in and makes a demand for payment expressly pursuant to, will know who is, and is not, an actual "real party in interest" to said legal matter, but further and more importantly will know whether or not an actual legal imperative of liability in-fact exist to attached said party to such and said legal matter, less one attempt to attach and bind a party illegally or fraudulently.

I, again, implore you, as in my first letter delivered to your suite Aug. 18, 2010, which you have yet to respond, "please check your records in this legal matter", as it is now obvious that you have made a mistake in your demand for payment from me for the "mortgage loan" described in your letters dated Aug. 9, 2010 and Aug. 19, 2010.

Thank you in advance for cooperation in this legal matter. Your prompt professional response will be fully appreciated.

Respectfully,

"All Rights Reserved"

I AM James S. Hawkins-El III, A Living Soul,
Free National Citizen of The United State of America, The People.

# EX. I



**First American Funding, LLC**

August 23, 2010

James S Hawkins El III
159 Beach 97th St,
Rockaway Beach, NY 11693

RE: 159 Beach 97th St, Rockaway Beach, NY 11693
    Chase Loan # 100001419400069008
    FA Loan # R07101000-RC

318 Main St
Millburn, NJ 07041

Dear Mr. Hawkins,

We are in receipt of your letter dated August 9, 2010.

Enclosed are copies of the original Note and Mortgage dated
November 1, 2006. The original lender is Washington Mutual
Bank, NA., which has since merged with JPMorgan Chase Bank.

Phone: 866-533-6600
Fax: 973-912-4466

JPMorgan Chase Bank transferred your Mortgage to First
American Funding via an Assignment of Mortgage. Copy of
Assignment & Good-Bye Letter enclosed.

Please call our office within 10 days of this notice to discuss your
account.

Thank you.

Very truly yours,

Maria Green
Loss Mitigation Specialist
1-866-533-6600

**First American Funding, LLC**

# EX. J

# THE PEOPLE OF THE UNITED STATES

*James S. Hawkins-El III, c/o 159 Bch 97ᵗʰ St. Rockaway Bch N.Y. 11693*

**First American Funding, LLC**
318 Main St.
Millburn, N.J. 07041                                                    Aug. 26, 2010
**Maria Green**, Loss Mitigation Specialist

**Re**: **1.)** letter dated Aug. 23, 2010 from Maria Green; **2.)** Notice of Assignment dated Aug. 5, 2010 from Cory Walker, National Recovery Group; **3.)** NYC Dept. of Finance Office of The City Register dated Nov. 1, 2006; **4.)** WaMu Equity Plus/CREDIT LINE MORGAGE dated Nov. 1, 2006.

# 3ʳᵈ LAWFUL NOTICE!

## AFFIDAVIT

**ATTENTION:** Maria Green, Loss Mitigation Spec., et al,

**I AM James S. Hawkins-El III. I do so affirm, say and declare that,**

**1. I am not "Mr. Hawkins"** to whom your letter dated Aug. 23, 2010 states "We are in receipt of your letter dated Aug. 9, 2010"

**2.** that I did not send First American Funding a letter dated Aug. 9, 2010, but rather an undated certified letter # 7010 1060 0001 1387 1424 sent Aug. 16, 2010 and received by Tina Pope Aug. 18, 2010 and a certified letter # 7010 1060 0001 1387 1493 dated Aug. 23, 2010 which was sent Aug. 23, 2010 and delivered Aug. 26, 2010 to First American Funding,

**3.** that the Aug. 5, 2010 letter, Notice of Assignment from Cory Walker, National Recovery Group, is an incomplete instrument, and so invalid,

**4.** that "JPMorgan Chase Bank" has not sent to me a "Copy of Assignment & Good-Bye Letter" as stated in your letter dated Aug. 23, 2010,

**5.** that the **information** on the NYC Dept. of Finance Office of The City Register dated Nov. 1, 2006 is, to my knowledge and understanding, **false**, as **I never borrowed $100,000.00 from WaMu Mutual Bank, F.A.**, nor did WaMu lend me $100,000.00 Nov. 1, 2006,

**6.** that I was given only the first 2 of 9 pages, of the NYC Dept. of Finance Office of The City Register's official document dated Nov. 1, 2010/prepared Dec. 7, 2006, and so here now request the balance of said document,

**7.** that First American Funding has not yet responded to any of my Lawful Notices, which are 3 including this one,

**8.** that the **DEBT** that I have with JP Morgan Chase Bank, N.A. is in "**DISPUTE**" and that the "**DISPUTED DEBT**," **IN ITS ENTIRETY**, is now and has been for quite some time, with the **FDIC** and **THE OFFICE OF COMPTROLLER OF THE CURRENCY under investigation and review,**

**9.** that from this juncture, of Lawful Notification/Affidavit, any act on the part of First American Funding to demand payments on this **DISPUTED DEBT** must be considered, an act, willingly and knowingly, to illegally procure payments on this **DEBT IN DISPUTE** by fraudulent and illegal means, as upon Lawful Notice it is incumbent upon the notified party to, with all due and necessary diligence, investigate the validity of the content of said notice, less at a later date be found to have intentionally, by proof of such notice, moved unlawfully,

**10.** that if First American Funding has the right under the law to collect payment on this **DEBT IN DISPUTE**, please **cite the contractual or statutory authority** etc by which First American Funding is lawfully moving **WHICH GRANTED** First American Funding **legal power and authority to have resolved** the **DISPUTE,** which **THE OFFICE OF THE COMPTROLLER OF THE CURRENCY/ADMINISTRATOR OF NATIONAL BANKS has not yet resolved,** in order for First American Funding to make a lawful demand for payment on or of said **DISPUTED DEBT**.

Thank you in advance for your every consideration of the facts affirmed, contained herein that you may now and henceforth be governed thereby.

Your prompt professional response to this legal matter will be fully appreciated

Respectfully,

"All Rights Reserved"

I AM James X Hawkins-El III, A Living Soul,
*Free National Citizen of The United States of America, The People.*

Cs: Brandon Bailey, Asset Manager

8/13 3/2010

MARC KASSMAN
Notary Public, State of New York
No. 01KA6133964
Qualified in Queens County
Commission Expires Dec. 27, 20_13_

2

# EX. K

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006120700103001001E84FC

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 9 |
|---|---|---|
| **Document ID: 2006120700103001** | Document Date: 11-01-2006 | Preparation Date: 12-07-2006 |

Document Type: MORTGAGE
Document Page Count: 7

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| CHRISTINE WEREMUENKO | GROUP9, INC. |
| 2150 CABOT BLVD WEST | 2150 CABOT BLVD WEST |
| LANGHORNE, PA 19047 | LANGHORNE, PA 19047 |
| 800-570-8928 | 800-570-8928 |
| CWEREM@GROUP9.NET | CWEREM@GROUP9.NET |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 16170 | 72 | Entire Lot | 159 BEACH 97 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ___ Page ____ *or* File Number_____

**PARTIES**

| **MORTGAGER/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| JAMES S HAWKINS EL III | WASHINGTON MUTUAL BANK, F.A. |
| 159 BEACH 97TH ST | 2273 N GREEN VALLEY PARKWAY, SUITE #14 |
| ROCKAWAY BEACH, NY 11693 | HENDERSON, NV 89014 |

x Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 100,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 100,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 500.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,000.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed 12-14-2006 14:21
City Register File No.(CRFN):
**2006000687042**

| TASF: | $ | 250.00 |
|---|---|---|
| MTA: | $ | 270.00 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 2,020.00 |
| Recording Fee: | $ | 72.00 |
| Affidavit Fee: | $ | 0.00 |

*Ganett M Lill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2006120700103001001C867C

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 9 |
|---|---|---|
| **Document ID: 2006120700103001** | Document Date: 11-01-2006 | Preparation Date: 12-07-2006 |
| Document Type: MORTGAGE | | |

**PARTIES**
**MORTGAGER/BORROWER:**
VALERIE GASTON
159 BEACH 97TH ST
ROCKAWAY BEACH, NY 11693

Recording requested by and
when recorded return to:
2005 CABOT BLVD. WEST

LANGHORNE, PA 19047
ATTN: GROUP 9, INC.

This Mortgage was prepared by:
DARRIN GRIFFIN
WASHINGTON MUTUAL BANK

 **Washington Mutual**

# WaMu Equity Plus™
# CREDIT LINE MORTGAGE

Loan Number:    0742069008

THIS MORTGAGE is from:
JAMES S HAWKINS EL III AND VALERIE GASTON

whose address is:
159 BEACH 97TH ST  ROCKAWAY BEACH, NY 11693-1323

("Borrower"); in favor of:
WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION, WHICH IS ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND WHOSE ADDRESS IS 2273 N GREEN VALLEY PARKWAY, SUITE #14, HENDERSON, NV 89014 ("LENDER") AND ITS SUCCESSORS OR ASSIGNS.

    1.  **Granting Clause.** Borrower hereby grants, bargains, sells, conveys and mortgages to Lender and its successors and assignees, the real property in _____QUEENS_____ County, New York, described below, and all rights and interest in it Borrower ever gets: SHOWN ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY THIS REFERENCE.

This mortgage affects real property that is improved or will be improved by a one or two family residence.

*Premises AKA: 159 Beach 97 Street*

Tax Parcel Number: _____, 16170-72_____
together with all insurance and condemnation proceeds related to it; all income, rents and profits from it; all plumbing, lighting, air conditioning, and heating apparatus and equipment; and all

30221 (02/14/06) w7.2                            BANK                            Page 1 of 6

fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in or used in connection with such real property, all of which at the option of Lender may be considered to be either personal property or to be part of the real estate.

All of the property described above will be called the "Property". If any of the Property is subject to the Uniform Commercial Code, this Mortgage is also a Security Agreement which grants Lender, as secured party, a security interest in all such property.

2. **Obligation Secured.**
(a) This Mortgage is given to secure performance of each promise of Borrower contained herein or in a _____WaMu Equity Plus(TM)_____ Agreement and Disclosure with Lender with a maximum credit limit of _____$100,000.00_____ (the "Credit Agreement") including any extensions, renewals or modifications thereof and repayment of all sums borrowed by Borrower under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Borrower may borrow, repay, and re-borrow from time to time, up to the maximum credit limit stated above and all such advances shall be secured by the lien of this Mortgage. This Mortgage also secures payment of certain fees and charges payable by Borrower under the Credit Agreement, certain fees and costs of Lender as provided in Section 9 of this Mortgage and repayment of money advanced by Lender to protect the Property or Lender's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, the Debt is due and payable in full on _11/05/2036_ (the "Maturity Date"). All of this money is called the "Debt."
(b) In addition to the Debt secured by this Mortgage, this Mortgage shall also secure and constitute a lien on the Property for all future advances made by Lender to Borrower for any purpose within twenty (20) years after the date of this Mortgage, just as if the advance made by were made on the date of this Mortgage. Any future advance may be made in accordance with the terms of the Credit Agreement or at the option of the Lender.

3. **Representations of Borrower.** Borrower represents that:
(a) Borrower is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or mortgage given in good faith and for value, the existence of which has been disclosed in writing to Lender; and
(b) The Property is not used for any agricultural or farming purposes.

4. **Promises of Borrower.** Borrower promises:
(a) To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Lender's written consent;
(b) To allow representatives of Lender to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions, and restrictions affecting the Property;
(c) To pay on time all lawful taxes and assessments on the Property;
(d) To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e) To see to it that this Mortgage remains a valid lien on the Property superior to all liens except those described in Section 3(a); and
(f) To keep the improvements on the Property insured by a company satisfactory to Lender against fire and extended coverage perils, and against such other risks as Lender may reasonably require, in an amount equal to the full insurable value of the improvements, and to

0742069008

deliver evidence of such insurance coverage to Lender. Lender will be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in the same manner as payments under the Note or, at Lender's sole option, released to Borrower.

5. **Sale, Transfer, or Further Encumbrance of Property.** The loan is personal to Borrower and the entire Debt shall be accelerated and become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by Borrower including, without limit, further encumbrance of the Property. A sale or other transfer of the Property or any interest therein by Borrower without the full payment of the Debt shall constitute an event of default hereunder.

6. **Curing of Defaults.** If Borrower fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or Deed of Trust, Lender may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Borrower's failure to comply. Repayment to Lender of all the money spent by Lender on behalf of Borrower shall be secured by this Mortgage. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Borrower on demand. Although Lender may take action under this paragraph, Lender is not obligated to do so.

7. **Remedies for Default.**
   (a) Prompt performance under this Mortgage is essential. If Borrower does not pay any installment of the Debt on time, or any other event occurs that entitles Lender to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, the Debt and any other money whose repayment is secured by this Mortgage shall immediately become due and payable in full, at the option of the Lender and the total amount owed by Borrower on the day repayment in full is demanded, including all unpaid interest, will thereafter bear interest at the rate specified in the Credit Agreement.
   (b) Upon the occurrence of a default as set forth in Section 7(a) above, Lender may institute an action to foreclose this Mortgage under New York law. Lender may seek any other remedies available to it under applicable New York law.
   (c) The foreclosure of this Mortgage is not the exclusive remedy of Lender to collect the Debt. Lender may, upon the occurrence of a default, as set forth in Section 7(a) above, institute any other remedies available to a creditor under New York law. In connection with any portion of the Property which is personal property, Lender shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the State of New York.
   (d) By accepting payment of any sum secured by this Mortgage after its due date, Lender does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8. **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the obligation secured by this Mortgage shall be paid to Lender to be applied to the obligation in the same manner as payments under the Credit Agreement.

9. **Fees and Costs.** Borrower shall pay Lender's reasonable cost of searching records, other reasonable expenses as allowed by law and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Mortgage, in any lawsuit or proceeding which Lender is obligated to prosecute or defend to protect the lien of this Mortgage and, in any other action taken by Lender to collect the Debt, including without limitation any disposition of the Property under the Uniform Commercial Code; and any action taken in bankruptcy proceedings as well as any appellate proceedings.

10. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage. Borrower shall pay Lender a Release Fee, unless prohibited by law, and for all recordation costs of any satisfaction of this Mortgage.

11. **Payoff and Similar Statements.** Unless prohibited by law, Lender may collect a fee in the amount determined by Lender, for furnishing a payoff demand statement or similar statement.

12. **Miscellaneous.** This Mortgage shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The words used in this Mortgage referring to one (1) person shall be read to refer to more than one (1) person if two (2) or more have signed this Mortgage or become responsible for doing the things this Mortgage requires. This Mortgage shall be governed by and construed in accordance with Federal law and to the extent Federal law does not apply, the laws of the State of New York. In the event of any action hereunder or related hereto, and subject to applicable law, Borrower hereby waives any right to a jury trial. If any provision of this Mortgage is determined to be invalid under law, that fact shall not invalidate any other provision of this Mortgage, but the Mortgage shall be construed as if not containing the particular provision or provisions held to be invalid, and all remaining rights and obligations of the parties shall be construed and enforced as though the invalid provision did not exist.

13. **Agreements about New York Lien Law.** Borrower will receive all amounts lent to Borrower by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four (4) months, or if the Property is not a single family dwelling, for at least eight (8) months, Borrower will (a) hold all amounts which I receive and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (b) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvements located on the Property, Borrower has a special responsibility under the law to use the amount in the manner described in Section 13 of this mortgage document.

14. **Riders.** If one (1) or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider         ☐ Other: _____

                                                                 (specify)

☐ Planned Unit Development Rider

0742069008

DATED AT _Valley Stream, n.y.___ this _1_ day of
_November, 2006._

BORROWER(S):

_____
JAMES S HAWKINS EL III

_____
VALERIE GASTON

0742069008

State of New York         )
                          ) ss.
County of _Nassau_        )

On the ___1___ day of ___Nov___ in the year _2006_ before me, the undersigned, a Notary Public in and for said State, personally appeared:

JAMES S HAWKINS EL III _____ and
VALERIE GASTON _____ and
_____ and
_____ and
_____ and
_____ and
_____ and

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

_Robert H Galamore_
Notary Public

ROBERT H GALAMORE
Notary Public - State of New York
NO. 01GA6057811
Qualified in Queens County
My Commission Expires  4-23-07

0742069008

## EXHIBIT "A"
## ATTACHMENT TO SECURITY INSTRUMENT

ALL THAT CERTAIN PARCEL OR TRACT OF LAND SITUATE IN THE BOROUGH
OF QUEENS, COUNTY OF QUEENS, STATE OF NEW YORK AND BEING THE
SAME REAL PROPERTY CONVEYED TO JAMES S HAWKINS EL III AND
VALERIE GASTON BY DEED ON 9/16/2004 AS DOCUMENT NO.
2004000578099 BOOK AMONG THE OFFICIAL RECORDS OF THE COUNTY OF
QUEENS, STATE OF NEW YORK. SAID DEED REFERENCE MADE HEREIN FOR A
MORE FULL DESCRIPTION.

BLOCK: 16170
LOT: 72

EX. L

# THE PEOPLE OF THE UNITED STATES

### James S. Hawkins-El III, c/o 159 Bch 97th St. Rockaway Bch 11693

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY    REGISTER**
**144-06 94TH AVE.**
**JAMAICA, NY 11435**

**Sept. 7, 2010**

Re: "Document ID 2006120700103001: MORTGAGE"

## LAWFUL NOTICE
### AFFIDAVIT

## BE IT KNOWN TO ALL WHOM IT MAY CONCERN AND/OR AFFECT:

I AM James S. Hawkins-El III, Valerie Gaston. We are in receipt of only pages 1 and 2 of the above referenced document recorded/filed 12-14-2006 14:21, which consist of 9 pages. The *document's* pages 1 and 2 were sent to us by First American Funding LLC.

Valerie Gaston and I, James S. Hawkins-El III, do so affirm and say that:

we have **never borrowed $100,000** from WASHINGTON MUTUAL BANK, F.A.,

that the information under "**MORTGAGER/BORROWER, MORGAGEE/LENDER**" in the above cited "**Document ID: 2006120700103001**: Document Type: Mortgage" is **false,**

that WASHINGTON MUTUAL BANK F.A. has **never lent** either of us **$ 100,000.**

that the "DWELLING" is a **2 "FAMILY** not **"1 FAMILY"** as recorded in the City Register. (Attached, pg 1 and 2)

that the **false information cited above must immediately be expunged** from the City Register as it is **not true.**

and that this LAWFUL NOTICE is being simultaneously copied to the presenter: CHRISTINE WEREMIJENKO.

Thank you in advance for your prompt professional response to this legal matter.

Respectfully,

"All Rights Reserved"

I AM James S. Hawkins-El III, Valerie Gaston, *Living Souls,*
*Free National Citizens of The United States of America, The People.*

MARC KASSMAN
Notary Public. State of New York
No. 01KA6136964
Qualified in Queens County
Commission Expires Dec. 27, 20

9/13/2010

EX. M

**First American Funding, LLC**

318 Main St
Millburn, NJ 07041

Phone: 866-533-6600
Fax: 973-912-4466

September 13, 2010

James S. Hawkins-E1 III
159 Beach 97th Street
Rockaway Beach, NY 11693

RE:     Mortgage and Note Dated November 1, 2006
          159 Beach 97th Street, Rockaway Beach, NY 11693

### NOTICE OF INTENTION TO FORECLOSE

Dear Mr. Hawkins,

**You are in default under the terms of the promissory note evidencing your loan and the mortgage securing the promissory note which encumbers real property situated at 159 Beach 97th Street, Rockaway Beach, NY 11693.**

Under the terms of the promissory note and/or mortgage, you are hereby notified of the following:

1.   You are in default because you have failed to pay the required monthly installments and late charges. As of the date hereof, payment in the amount of **$4,211.88** certified funds only, is required to cure the default. **After October 1, 2010 an additional payment of $226.39 will be due and payable.** You are also responsible for any additional late charges assessed during this period.

2.   If there is a reason to dispute the debt, or any portion thereof, you must notify First American Funding, LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated.

3.     Your failure to cure the default **within 30 days** will result in the entire balance becoming due and payable under the terms of the promissory note and mortgage.  In addition, you will also be liable for attorney fees and costs incurred in connection with any proceedings on the promissory note and mortgage and such other costs that the court may allow.

First American Funding, LLC

It is our policy to: (1) report all foreclosures to the major credit



**First American Funding, LLC**

318 Main St
Millburn, NJ 07041

Phone: 866-533-6600
Fax: 973-912-4466

bureaus, (2) to seek deficiency Judgments against borrowers when, as a result of a foreclosure, a deficiency under the laws of your State is established, and (3) to file a 1099 with the IRS reporting the deficiency amount as income to you.

**YOU HAVE THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE (OCTOBER 13, 2010) TO CURE THE DEFAULT, THEREAFTER, A FORECLOSURE ACTION WILL BE INITIATED.**

Sincerely,

Maria Green
Loss Mitigation Specialist

**Reg. & Certified mail**

First American Funding, LLC is a debt collector; all information will be used for that purpose.

First American Funding, LLC

# EX. N

# THE PEOPLE OF THE UNITED STATES OF AMERICA
### James S Hawkins-El III, c/o 159 Bch 97ᵗʰ St. Rockaway Bch NY 11693

THE COMPTROLLER OF THE CURRENCY
ADMINSTRATOR OF NATIONAL BANKS
CONSUMER ASSISTANCE GROUP
1301 McKINNEY STREET, SUIT 3450
HOUSTON, TEXAS 77010-9050

Feb. 20, 2010

Re:    CASE# 01036677

# LAWFUL NOTICE
### AFFIDAVIT

Able Administrator of National Banks,

I AM James S. Hawkins-El III. I do so affirm, say and declare that:

Don Suter/CHASE BANK, HOME LENDING EXECUTIVE OFFICE, CHASE HOME FINANCE LLC, **admits**, in his letter, dated Feb. 8, 2010, (Attached) that CHASE BANK **did not have the lawful/legal authority or right to convert my accounts**,(WAMU EQUITY PLUS ACC# 0724069008, WAMU FIXED RATE LOAN OPTION ACC# 0742069016), after the accounts were **transferred** to CHASE BANK, which is evidenced directly from his sole reliance upon and specific reference to "**page six, section 18** of the signed Home Equity Line of Credit (HELOC) **agreement which covers transfers and assignments of loans**" (par. 2, line 2,3)  **not any type, sort, degree or species of conversion** to said "loans" or "accounts," which Don Suter/CHASE BANK plainly admits were converted, by stating, "**these accounts were converted**" (par. 3, line 3)

that **page six section 18** states "Transfer and Assignment. Without prior notice to or approval from you, we reserve the right to **sell** or **transfer** this Agreement, the Line of Credit, and our obligations under this Agreement to any other person…" (Attached)

that the above documented evidence and proof established soundly thereby and additionally by Don Suter/CHASE BANK'S own admission of his/CHASE BANK'S exclusive reliance thereupon, confirms beyond doubt the breach of said agreement and violation of my rights pursuant to such, as CHASE BANK has knowingly and willingly neglected their obligations in "this Agreement" having moved, without Notice to, or Approval from me, will beyond the scope and limit of any right(s) conferred upon CHASE BANK to act by "this Agreement," as there is clearly **no provision(s)** in **section 18** to allow, authorize or permit CHASE BANK to convert "these accounts," which CHASE BANK did in fact convert,

1

that Don Suter/CHASE BANK did not address CHASE BANK'S violations of the REAL ESTATE PROCEDURE ACT 1974: Sec. 6 (1) Notice of Receipt of Inquiry (B) (i)(ii) (2) Action with Respect to Inquiry (A) (B) (i)(ii) (C) (i)(ii), Title 15 USC sub. sec. 1692g (b), CHASE BANK Written Policy: Billing Rights Summary,

that Don Suter/CHASE BANK must necessarily answer the questions of why they have, for six months, not complied with the afore stated laws and why it took the FEDERAL DEPOSIT INSURANCE CORPORATION and THE COMPTROLLER OF THE CURRENCY to force CHASE BANK to move in this legal matter, where CHASE BANK was already legally bound by the "signed agreement" and laws to so move,

that Don Suter/CHASE BANK or the responsible party(s) in "The Chase Legal Department" et al must explain why I was threatened with a legal action, "Acceleration Warning (Notice of Intent To Foreclose, Nov. 2, 2009, Nov. 18, 2009) while it was CHASE BANK that was in violation and noncompliance with the legal apparatus, laws and regulations which created and govern its lawful/legal function and capacity to assert any rights, claims and demands over anything or natural person,

that CHASE BANK must answer why they have continued to send me bills (Attached) for the "Disputed Debt" irrespective of the fact that CHASE BANK never properly validated said "Disputed Debt in any shape, form or fashion or even acknowledge the Lawful Notices, already on fill in this case, which were sent, received and signed for by agents/employees of CHASE BANK

that Don Suter/CHASE BANK'S letter, dated February 8, 2010 is the first and only response sent to me concerning the legal matters in question which commenced Aug. 21, 2009 when CHASE BANK received and sign for my first letter, dated Aug. 17, 2009,

that I wrote directly to The Comptroller of The Currency and sent the same correspondence, dated Nov. 27, 2009, twice, and both correspondences were received on the same date, Dec. 23, 2009, at the same time, 2:54 pm, and were signed for by a N. Cholen, and I received a direct response to in a letter dated Dec. 31, 2009 from The Comptroller of The Currency to which I am now responding,

that I have no knowledge of the Federal Deposit Insurance Corporation forwarding any thing, i.e. the Nov. 27, 2009 correspondence, on my behalf to The Comptroller of The Currency, though I did send them the same correspondence above stated which they received on Dec. 15, 2009 at 2:21 pm and it was signed for by B. Asane,

that Don Suter/CHASE BANK is still in noncompliance to the aforesaid laws, rules and regulations and in breach of the "signed agreement" in question,

that I very respectfully request the Administrator of National Banks to move Don Suter/Chase Bank without delay and forthwith to answer thoroughly and completely the issues I have again here raised,

2

and that if I have overlooked, misstated, or left-out etc any pertinent issues here or in my past correspondences, I reserve the right to, upon discovery of said issues, bring them forth.

Thank you in advance for your prompt professional response to this legal matter.

Respectfully,

"All Rights Reserved"

I AM James S. Hawkins-El III, A Living Soul,
Free National Citizen of The United States of America, The People.     2/22/10

Cs: Don Suter/CHASE BANK

MARC KASSAM
OTARY PUBLIC - STATE OF NEW YORK
No. 01KA6138465
Qualified in Queens County
Commission Expires 12/27/20

Attached: CHASE BANK'S bills: Aug. 2009 thru Feb. 2010 (7) acc# 00419400069008
         Don Suter/CHASE BANK'S letter dated February 8, 2010 – PAGE SIX SECTION 18

3

# EX. O

# THE PEOPLE OF THE UNITED STATES
### James S. Hawkins-El III, c/o 159 Bch 97ᵗʰ St. Rockaway Bch NY 11693

First American Funding, LLC
318 Main St.
Millburn, NJ 07041                                        Sept. 18, 2010
Maria Green, Loss Mitigation Specialist

Re:  "NOTICE OF INTENT TO FORECLOSE" dated Sept. 13, 2010

# 4ᵀᴴ LAWFUL NOTICE!
## DISPUTE OF DEBT
### AFFIDAVIT

**Attn: Maria Green,** Loss Mitigation Specialist,

**I AM James S. Hawkins-El III.** I do so affirm, say, and declare that,

1.   **I,** as I have repeatedly stated in previous correspondence to you, **am not "Mr. Hawkins"** to whom you insisted on directing your letters,

2.   **that I take great offense at such name calling as it is profane, extremely derogatory, and a very virulent form of harassment. PLEASE REFRAIN FROM THESE ABUSES thank you,**

3.   that pursuant to item number 2 in your letter dated Sept. 13, 2010, which states **"If there is a reason to dispute the debt,"** I have attached the final "LAWFUL NOTICE/AFFIDAVIT" dated Feb. 20, 2010 sent to the OFFICE OF THE COMPTROLLER OF THE CURRENCY/ADMINISTRATOR OF NATIONAL BANKS and copied to Don Suter/CHASE BANK, **CASE# 01036677,**

4.   that JP MORGAN CHASE BANK N.A. **DID NOT CHALLENGE, REFUTE OR OBJECT IN ANY WAY** to the above stated LAWFUL NOTICE/AFFIDAVIT"

5.   that JP MMORGAN CHASE BANK N.A. **sold the "DISPUTED DEBT"** in **"As Is condition with all faults, without any recourse to Assignor whatsoever..."** while it was still in "DISPUTE,"

1

6.   that the SALE of the "DISPUTED DEBT" **did not cure** the BREACH of "THE AGREEMENT" or resolve the "VIOLATIONS OF LAW" or "THE DISPUTE,"

7.   that JP MORGAN CHASE BANK N.A. **forfeited all RIGHTS** to demand payment of the "DISPUTED DEBT" as they never "VALIDATED THE DEBT,"

8.   that JP MORGAN CHASE BANK N.A. "ABANDONED" the "THE DISPUTED DEBT," and **surrendered all rights, interest and claims to and flowing from the four corners of "THE AGREEMENT"** securing "THE DISPUTED DEBT" which they COULD NOT AND DID NOT LEGALLY "VALIDATE,"

9.   that the **SALE** of the "DISPUTED DEBT" is **IRREFUTABLE PROOF OF INTENT TO "ABANDON"** the "DISPUTED DEBT," and **RELINQUISH ALL RIGHTS** thereto and from,

10.  that the "**ASSIGNOR**," JP MORGAN CHASE BANK N.A. **SOLD** the **"DEBT WHILE IN DISPUTE"** which **CONFERRED ABSOLUTELY NO RIGHTS** to the " **ASSIGNEE**," FIRST AMERICAN FUNDING, to demand or collect payments which JP MORGAN CHASE BANK N.A. could not in-fact demand or collect themselves,

11.  that the "**Mortgage and Note Dated November 1, 2006**" referenced in your **letter dated Sept. 13, 2010 are ABSOLUTE NULLITIES and VOID as they rest, rely and depend upon the VALIDITY OF THE "DISPUTED DEBT"** which again was NOT VALIDATED, but rather was ABANDONED and ALL RIGHTS AND CLAIMS thereto and from were SURRENDERED, FORFEITED AND LOST,

12.  that the "**Assignee confirms that it has taken such steps as it deems appropriate with respect to conducting due diligence with respect to the status and quality of the Mortgage loan, Note and Deed of Trust/Mortgage,**" which signifies that either FIRST AMERICAN FUNDING knew or should have known that all things originating from and tether to and secured by said "DISPUTED DEBT" were also in DISPUTE,

13.  that the "**Assignee, First American Funding has no rights or legal claims against me for the "DISPUTED DEBT," and relied only upon the rebuttable presumption of a "DEBT" which does not exist, as the "Assignor, JP MORGAN CHASE BANK N.A.** could not bestow upon, assign, transfer, or sell any rights or claims, which it waived, forfeited and forever relinquished due its BREACH of "THE AGREEMENT," VIOLATIONS of RESPA and the ABANDONMENT etc of the "DEBT," which it could not and DID NOT VALIDATE before selling,**

14.  that because First American Funding has threatened me with the legal action of 'FORECLOSURE" I proffer this: "**Caveat emptor, qui ignorare non debuit quod jus alienum emit" LET A BUYER BEWARE; FOR HE OUGHT NOT TO BE IGNORANT OF WHAT THEY ARE WHEN HE BUYS THE RIGHTS OF ANOTHER.**" i.e. First American Funding bought absolutely no rights in or to a VALID DEBT but rather a "DISPUTED DEBT" which was ABANDONED AND SOLD,

2

"**As Is ...with all faults.**" WHILE IN DISPUTE, thus FIRST AMERICAN FUNDING bought nothing and can assert no right to payment or recovery of any kind, from Valerie Gaston or me, pursuant to their **greatly flawed purchase,**

15.    that this is the fourth LAWFUL NOTICE sent to First American Funding concerning "THE DISPUTED DEBT" of which none have been answered.

16.    that The legal DISPUTE of DEBT has been SETTLED by the ABANDONMENT AND SALE etc. of THE DISPUTED DEBT, by JP MORGAN CHASE BANK N.A. PLEASE **CEASE AND DESIST** ALL EFFORT TO COLLECT PAYMENT AS **NO DEBT NOW EXIST.**

Thank you in advance for your every consideration of the facts provided herein. Your prompt professional response will be wholly appreciated

JUS,

*"All Rights Reserved"*

I AM James S Hawkins-El III, *A Living Soul,*
*Free National Citizen of The United States of America, The People.*

MARC KASSMAN
Notary Public, State of New York
No. 01KA6138964
Qualified in Queens County
Commission Expires Dec. 27, 20__

Cs:   OFFICE OF THE COMPTROLLER OF THE CURRENCY
ADMINISTRATOR OF NATIONAL BANKS

Don Suter/CHASE BANK

Attached: "ASSIGNMENT of MORTGAGE" dated Aug. 3, 2010
"LAWFUL NOTICE/AFFIDAVIT" dated Feb. 20, 2010

3

EX. P

November 22, 2010



First American Funding

**James Hawkins EL III**
**159 Beach 97th St**
**Rockaway Beach, NY 11693**

Dear Mr. Hawkins EL III,

You could lose your home. Please read the following notice carefully. As of **November 22, 2010** your home loan is **180+** days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making a payment of **$5,561.38** by **February 22, 2011**.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. Attached to this notice is a list of government approved housing counseling agencies in your area that provide free or very low cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty.

318 MAIN ST.
MILLBURN, NJ 07041
Phone: 866-533-6600
Fax:    973 912-4466

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

**IF YOU ARE NOT OBLIGATED ON THE DEBT OR IF THE DEBT HAS BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING, THIS IS FOR INFORMATIONAL PURPOSES ONLY AND IN NOT AN ATTEMPT TO ASSESS OR COLLECT THE DEBT FROM YOU PURPOSELY.**

Housing counselors can help you access your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or ever working out a period of loan forbearance. If you wish, you may also contact us directly at **(866)533-6600** and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve resolution. The longer you wait the fewer options you may have.

If this matter is resolved within 90 days from the date this notice is mailed, we may commence legal actions against you (or sooner if you cease to live in the dwelling as your primary residence). If you need further information, please call the New York State Banking Department's toll free help line at (877) BANK-NYS [(877)226-5697] or visit the department's website at http://www.banking.state.ny.us.

First American Funding,
LLC

Sincerely,

*Sonia LaRiccia*

Sonia LaRiccia

Enclosures: Agency List



**First American Funding**

First American Funding, LLC is not affiliated with, nor endorses, the attached list of approved counseling agencies. Additional New York State Banking Department approved counseling agencies may be found at http://www.banking.state.ny.us/legal/4lac.htm.

*Additional amounts may be due under your Note and Deed of Trust/Mortgage after the date of this notice. For the exact amount you must pay to bring your loan current, please contact our office at (866)533.6600.

318 MAIN ST.
MILLBURN, NJ 07041
Phone: 866-533-6600
Fax:    973 912-4466



First American Funding,
LLC

# Queens

| Housing Agency | Address | Phone | Additional Information |
|---|---|---|---|
| Asian Americans for Equality | 133-04 39th Avenue Flushing, NY 11354 OR 111 Division Street New York, NY 10002 | 718-961-0888 OR 212-964-2288 | |
| Asociacion Tepeyac | 251 W. 14th Street New York, NY 10011 | 212-633-7108 | Spanish speaking counselors on staff |
| Center for New York City Neighborhoods CNYCN | 74 Trinity Place Suite 1302 New York, NY 10006 | 646-786-0888 | Provides intake and direct referrals for more than 50 free, nonprofit housing counselors and legal service agencies throughout NYC |
| CHANGER | 402 Chestnut Street Brooklyn, NY 11208 | 718-304-7753 | Appointment required |
| CHHAYA | 37-43 77th Street 2nd Floor Jackson Heights, NY 11372 | 718-478-3848 | Southeast Asian speaking counselors on staff |
| Cypress Hills Local Development Corp. | 3214 Fulton St Brooklyn NY 11208 | 718-647-8100 | Serving Brooklyn and parts of western Queens. |
| Greenpath | 80-02 Kew Gardens Road Suite 710 Kew gardens, NY 11415 | 888-776-6738 | Make appointments by phone first |
| LIFE, Inc. | 112 Spruce Street Cedarhurst, NY 11516 | 516-374-4564 | Serving Nassau and eastern Queens |
| Margert Community Corp. | 325 Beach 37th Street Far Rockaway, NY 11691-1510 | 718-471-3724 | |
| Money Management International | 88-32 Sutphin Blvd Jamaica, NY 11435 | 866-346-2227 | |
| Neighborhood Housing Services of Jamaica | 89-70 162nd Street Jamaica, NY 11432 | 718-291-7400 | Make appointment NIS |
| Neighborhood Housing Services of New York City - Homeownership Center 1 | 306 West 37th Street 12th Floor New York, NY 10018 | 718-230-7610 | NIS |
| Neighborhood Housing Services of Northern Queens | 60-20 Woodside Avenue, Woodside, NY 11377 | 718-457-1017 | NIS |
| New York City | 153-01 Jamaica Avenue | 718-886-6162 | |

| Commission on Human Rights | Jamaica, NY | | |
|---|---|---|---|
| Office of the New York City Comptroller | 1 Centre Street Room 835, New York, NY 10007 | 212-669-4915 | |
| The Parodneck Foundation | 121 6th Avenue Rm. 501 New York, NY 10021 | 212-431-9700 ext: 316 | |
| Ridgewood Bushwick Senior Citizens Council, Inc. | 217 Wycoff Avenue Brooklyn, NY 11237 | 718-366-3800 ext: 212, 113 | Serves Brooklyn and western Queens |
| Rockaway Development & Revitalization Corp. | 1920 Mott Avenue Rm# 2 Far Rockaway, NY 11691 | 718-327-5300 | Serves Queens and western Nassau |
| Queens Legal Services Foreclosure Prevention Project | 89-00 Sutphin Boulevard Suite 206 Jamaica, NY 11435 | 347-592-2182 | Foreclosure Hotline open on Mondays from 1P.M.- 4 P.M. |
| La Fuerza Unida, Inc. | 1 School Street, Suite 302 Glen Cove, NY 11542 | 516-759-0788 ext: 12 | Serving Nassau, Western Suffolk, and Queens. Spanish speaking staff available. |

EX. Q



**Comptroller of the Currency**
**Administrator of National Banks**

November 2, 2010

James S. Hawkins-El, III
159 Beach 97th Street
Rockaway Beach, NY  11693-1323

Re:  Case# 01036677 - JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Dear Mr. Hawkins-El:

The Office of the Comptroller of the Currency (OCC) is responding to your letter regarding the above-mentioned bank.  The focus of the OCC's review of consumer complaints against national banks is to determine whether the banks' actions are consistent with banking statutes, regulations or any policies that are applicable to nationally chartered banking institutions.

In your correspondence received from The Commonwealth of Massachusetts Office of the Attorney General and in additional correspondence from you, you claimed violations of the Real Estate Settlement Procedures Act (RESPA) and other regulations by the bank.  You disputed the debt owed on your home equity line of credit (HELOC) account.  You requested further assistance in this matter.

The OCC contacted the bank, which responded directly to you by letters dated February 8, 2010 and October 20, 2010.  Copies of the letters are enclosed for your review.  The bank informed

02/16/2011  12:51   17183487829                                                          P.001

| JOB NO. |     | MODE | NO. | DESTINATION TEL/ID | START TIME | PAGE | RESULT |     |
|---------|-----|------|-----|--------------------|------------|------|--------|-----|
| 1755    | TX  | G3   | 001 | 19739124466        | 02/16 12:49 | 003 | OK     | 01'38 |

```
***************************************
***        TX REPORT         ***
***************************************
```

# EX. R-1



Center for NYC Neighborhoods

Need Help Keeping Your Home?

**Stop Foreclosure for FREE**

**Call 311**

**www.ForeclosureHelpNYC.org**

cnycn

---

JAMES HAWKINS EL
OR CURRENT RESIDENT
159 BEACH 9TH ST
ROCKAWAY BEACH NY 11693-1323

8



Message from Your Elected Officials

**Stop Foreclosure for FREE**

cnycn

PRSRT STD
US POSTAGE PAID
PHOENIX, AZ
PERMIT # 5558

Center for NYC Neighborhoods
74 Trinity Place, Suite 1302
New York, NY 10006



The Center for NYC Neighborhoods (CNYCN) was created by Mayor Bloomberg, the New York City Council, nonprofit organizations, foundations and corporate leaders to provide free, local nonprofit housing counseling and legal services to New York City residents at risk of losing their homes to foreclosure.

Center for NYC Neighborhoods | 74 Trinity Place, Suite 1302
New York, NY 10006 | www.ForeclosureHelpNYC.org

 

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, NY 10007

THE COUNCIL
OF
THE CITY OF NEW YORK
CITY HALL
NEW YORK, NY 10007

Dear Homeowner:

We're aware that you're facing a difficult situation. You're receiving this letter because you're behind in your mortgage payments and at risk of losing your home. But there's help available – and it's free.

The Center for New York City Neighborhoods (CNYCN) can help you keep your home. They will work with you to help you understand your finances, connect you to free legal services, and even speak to your bank on your behalf. All this help is available in many languages, and it won't cost you any money.

Just call 311 and ask to speak to a "foreclosure prevention specialist." An operator will connect you to an expert who wants to help. But it is important that you call now. Waiting can cause even greater problems, and getting help sooner means you have a better chance of keeping your home. So call 311 now, any time of the day or night.

We want to do everything we can to help you keep your home and to keep our City strong. CNYCN is our trusted partner to make that happen. If you want more information about the free services CNYCN can offer, you can go to their web site at www.ForeclosureHelpNYC.org.

We're sending this letter because we want to help you. You are important; your home is important; your community is important. So please take this opportunity to help yourself and your family. Call 311 today and ask for a "foreclosure prevention specialist."

Sincerely,

Christine C. Quinn
Speaker

Michael R. Bloomberg
Mayor

Lewis A. Fidler
Assistant Majority Leader

# EX. T



**First American Funding, LLC**

318 Main St
Millburn, NJ 07041

Phone: 866-533-6600
Fax: 973-912-4466

First American Funding, LLC

April 2, 2011

James S. Hawkins-El III
159 Beach 97th Street
Rockaway Beach, NY 11693

RE:     Mortgage and Note Dated November 1, 2006
        159 Beach 97th Street, Rockaway Beach, NY 11693
        FA Loan #R07101000-RC

### NOTICE OF DEFAULT AND RIGHT TO CURE

Dear Mr. James S. Hawkins-El III:

**You are in default under the terms of the promissory note evidencing your loan and the mortgage securing the promissory note which encumbers real property situated at 159 Beach 97th Street, Rockaway Beach, NY 11693.**

Under the terms of the promissory note and/or mortgage, you are hereby notified of the following:

1.   You are in default because you have failed to pay the required monthly installments and late charges. As of the date hereof, payment in the amount of **$467.78** <u>certified funds only</u>, is required to cure the default. **After May 1, 2011 an additional payment of $226.39 will be due and payable**. You are also responsible for any additional late charges assessed during this period.

2.   If there is a reason to dispute the debt, or any portion thereof, you must notify First American Funding, LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated.

3.   Your failure to cure the default **<u>within 30 days</u>** will result in the entire balance becoming due and payable under the terms of the promissory note and mortgage. In addition, you will also be liable for attorney fees and costs incurred in connection with any proceedings on the promissory note and mortgage and such other costs that the court may allow.

It is our policy to: (1) report all foreclosures to the major credit



**First American Funding, LLC**

318 Main St
Millburn, NJ 07041

Phone: 866-533-6600
Fax: 973-912-4466

bureaus, (2) to seek deficiency Judgments against borrowers when, as a result of a foreclosure, a deficiency under the laws of your State is established, and (3) to file a 1099 with the IRS reporting the deficiency amount as income to you.

**YOU HAVE THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE (MAY 2, 2011) TO CURE THE DEFAULT, THEREAFTER, A FORECLOSURE ACTION WILL BE INITIATED.**

Sincerely,

Maria Green
Loss Mitigation Specialist

**Reg. & Certified mail**

First American Funding, LLC is a debt collector; all information will be used for that purpose.

First American Funding, LLC

EX. U

April 2, 2011



**First American Funding**

James Hawkins EL III
159 Beach 97th St
Rockaway Beach, NY 11693

Dear Mr. Hawkins,

You could lose your home. Please read the following notice carefully. As of **April 2, 2011** your home loan is **30+** days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making a payment of **$1,191.95** by July 2, 2011.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. Attached to this notice is a list of government approved housing counseling agencies in your area that provide free or very low cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty.

318 MAIN ST.
MILLBURN, NJ 07041
Phone: 866-533-6600
Fax:   973 912-4466

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

**IF YOU ARE NOT OBLIGATED ON THE DEBT OR IF THE DEBT HAS BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING, THIS IS FOR INFORMATIONAL PURPOSES ONLY AND IN NOT AN ATTEMPT TO ASSESS OR COLLECT THE DEBT FROM YOU PURPOSELY.**

Housing counselors can help you access your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or ever working out a period of loan forbearance. If you wish, you may also contact us directly at **(866)533-6600** and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve resolution. The longer you wait the fewer options you may have.

If this matter is resolved within 90 days from the date this notice is mailed, we may commence legal actions against you (or sooner if you cease to live in the dwelling as your primary residence). If you need further information, please call the New York State Banking Department's toll free help line at (877) BANK-NYS  [(877)226-5697]  or  visit  the  department's  website  at http://www.banking.state.ny.us.

First American Funding,
LLC

Sincerely,

Sonia LaRiccia

Enclosures: Agency List



**First American Funding**

First American Funding, LLC is not affiliated with, nor endorses, the attached list of approved counseling agencies. Additional New York State Banking Department approved counseling agencies may be found at http://www.banking.state.ny.us/legal/4lac.htm.

*Additional amounts may be due under your Note and Deed of Trust/Mortgage after the date of this notice. For the exact amount you must pay to bring your loan current, please contact our office at (866)533.6600.

318 MAIN ST.
MILLBURN, NJ 07041
Phone: 866-533-6600
Fax:    973 912-4466



First American Funding,
LLC

# Queens

| Housing Agency | Address | Phone | Additional Information |
|---|---|---|---|
| Asian Americans for Equality | 133-04 39th Avenue Flushing, NY 11354 OR 111 Division Street New York, NY 10002 | 718-961-0888 OR 212-964-2288 | |
| Asociacion Tepeyac | 251 W. 14th Street New York, NY 10011 | 212-633-7108 | Spanish speaking counselors on staff |
| Center for New York City Neighborhoods CNYCN | 74 Trinity Place Suite 1302 New York, NY 10006 | 646-786-0888 | Provides intake and direct referrals for more than 50 free, nonprofit housing counselors and legal service agencies throughout NYC |
| CHANGER | 402 Chestnut Street Brooklyn, NY 11208 | 718-304-7753 | Appointment required |
| CHHAYA | 37-43 77th Street 2nd Floor Jackson Heights, NY 11372 | 718-478-3848 | Southeast Asian speaking counselors on staff |
| Cypress Hills Local Development Corp. | 3214 Fulton St Brooklyn NY 11208 | 718-647-8100 | Serving Brooklyn and parts of western Queens. |
| Greenpath | 80-02 Kew Gardens Road Suite 710 Kew gardens, NY 11415 | 888-776-6738 | Make appointments by phone first |
| LIFE, Inc. | 112 Spruce Street Cedarhurst, NY 11516 | 516-374-4564 | Serving Nassau and eastern Queens |
| Margert Community Corp. | 325 Beach 37th Street Far Rockaway, NY 11691-1510 | 718-471-3724 | |
| Money Management International | 88-32 Sutphin Blvd Jamaica, NY 11435 | 866-346-2227 | |
| Neighborhood Housing Services of Jamaica | 89-70 162nd Street Jamaica, NY 11432 | 718-291-7400 | Make appointment NIS |
| Neighborhood Housing Services of New York City - Homeownership Center 1 | 306 West 37th Street 12th Floor New York, NY 10018 | 718-230-7610 | NIS |
| Neighborhood Housing Services of Northern Queens | 60-20 Woodside Avenue, Woodside, NY 11377 | 718-457-1017 | NIS |
| New York City | 153-01 Jamaica Avenue | 718-886-6162 | |

| | | | |
|---|---|---|---|
| Commission on Human Rights | Jamaica, NY | | |
| Office of the New York City Comptroller | 1 Centre Street Room 835, New York, NY 10007 | 212-669-4915 | |
| The Parodneck Foundation | 121 6th Avenue Rm. 501 New York, NY 10021 | 212-431-9700 ext: 316 | |
| Ridgewood Bushwick Senior Citizens Council, Inc. | 217 Wycoff Avenue Brooklyn, NY 11237 | 718-366-3800 ext: 212, 113 | Serves Brooklyn and western Queens |
| Rockaway Development & Revitalization Corp. | 1920 Mott Avenue Rm# 2 Far Rockaway, NY 11691 | 718-327-5300 | Serves Queens and western Nassau |
| Queens Legal Services Foreclosure Prevention Project | 89-00 Sutphin Boulevard Suite 206 Jamaica, NY 11435 | 347-592-2182 | Foreclosure Hotline open on Mondays from 1P.M.- 4 P.M. |
| La Fuerza Unida, Inc. | 1 School Street, Suite 302 Glen Cove, NY 11542 | 516-759-0788 ext: 12 | Serving Nassau, Western Suffolk, and Queens. Spanish speaking staff available. |

EX. V

# THE PEOPLE OF THE UNITED STATES

*James S. Hawkins-El III, c/o 159 Bch 97ᵗʰ St. Rockaway Bch, NY 11693*

"First American Funding LLC"
Attn: Maria Green, "Loss Mitigation Specialist"
318 Main St. Suite 201
Millburn NJ 07041

April 8, 2011

Re: "NOTICE OF DEFAULT AND RIGHT TO CURE" dated April 2, 2011

## 5ᵀᴴ LAWFUL NOTICE
### "DISPUTE OF DEBT"
### 2ⁿᵈ QUALIFIED WRITTEN REQUEST

#### AFFIDAVIT

**ATTN**: Maria Green, "Loss Litigation Specialist,"

I AM, James S. Hawkins-El III, do so affirm and say,

"that on Sept. 13, 2010 'First American Funding, LLC' 318 Main St. Suite 201 Millburn NJ 07041 sent me a **"NOTICE OF INTENTION TO FORCLOSE," which states in pertinent part '2. If there is any reason to dispute this debt, or any portion thereof, you must notify First American Funding, LLC" in writing within 30 days of this notice. Otherwise First American Funding, LLC will consider this debt validated.,'**

that though I notified 'First American Funding, LLC' in writing within 30 days of the Sept. 13, 2010 notice, on Sept. 18, 2010 '4ᵗʰ Lawful Notice, Dispute of Debt,' and disputed the debt (which was already in dispute, case#01036677, with the Comptroller) in a timely manner 'First American Funding, LLC' did not respond at all pursuant to the guidelines contained in RESPA Sec 6, (e) (1) Notice of Inquiry (B) (i)(ii), (2) Action with Respect to Inquiry (A) (B) (i) (ii) (C) (i)(ii), Title 15 USC § 1692g(b) or FDCPA (809) Validation of Dept (b) etc, and just moved forward with absolute disregard for the Lawful dispute process," (Lawful Notice Complaint/Affidavit of Larceny, Extortion and Fraud, dated Mar. 8, 2011 addressed to Paula T. Dow, State Attorney General, already sent to and received by you),

that I "Dispute this Debt" pursuant to item NO: 2. in your recent "NOTICE OF DEFAULT AND RIGHT TO CURE," dated April 2, 2011, which states "If there is a reason to dispute the debt, or any portion thereof, you must notify First American Funding, LLC in writing within 30 days of this notice. Otherwise, First American Funding, LLC will consider this debt validated."

that I refer you, Maria Green, to the "4th LAWFUL NOTICE!, DISPUTE OF DEBT" dated Sept. 18, 2010 (attached for your convenience), which was sent in response to your Sept. 13, 2010 "NOTICE OF INTENTION TO FORECLOSE," which you did not responded to, and which I repeat here in its entirety in Lawful response to item No: 2 of your "NOTICE OF DEFAULT AND RIGHT TO CURE" dated April 2, 2011,

Thank you in advance for your prompt professional response within the timetables prescribed by all the applicable laws governing such and said responses.

Respectfully

"All Rights Reserved"

*Lau Michael S. Hawkins-El III, A Living Soul,*
*Free National Citizen of The United States of America, The People,*

April 10th, 2-11

Jason Stybel
Notary Public, State of New York
No. 01ST4997632
Qualified in Nassau County
Commission Expires June 15, 2014

Cs:
Paula T. Dow, State Attorney General, State of New Jersey
Ira Bailey, "Vice President, First American Funding, LLC"

*Addendum:*

I have finally located a "First American Funding, LLC (Bailey, Ira, 2003) Filing No: 0400200434 Type Code LLC. Is that "Bailey, Ira" the same Ira Bailey located at 318 Main St. Suite 201 Millburn NJ 07041?

# EX. W

# NOTICE OF ASSIGNMENT

August 5, 2010

JAMES S HAWKINS EL III
159 BEACH 97TH ST
ROCKAWAY BEACH    NY 11693

Re: Account # 10000141940006900B

James S Hawkins El III:

This letter is to serve as notification that the servicing of your mortgage loan is being assigned from Chase Home Finance to **First American Funding, LLC**, and effective 07/30/2010.

The assignment of the mortgage loan does not affect any terms or conditions of the mortgage instrument, other than the terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. Your new servicer must also send you this notice no later than 15 days after this effective date.

Your present servicer is Chase Home Finance. If you have any questions relating to the transfer of servicing from your present servicer, call my office between 8:00 a.m. and 5:00 p.m. central/standard time, Monday - Friday, at 480-902-7551.

The business address for your new servicer is:

**318 MAIN STREET**
**MILLBURN, NEW JERSEY 07041**

The telephone number of your new servicer is 866-533-6600. If you have any questions relating to the transfer of servicing to your new servicer, please contact them.

The date that your present servicer will stop accepting payments from you is 07/30/2010.

The date that your new servicer will start accepting payments from you is 07/30/2010. Send all payments on or after that date to your new servicer.

You should also be aware of the following, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12USC 2605).

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of the receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the reason for your request.

Not later than 60 business days after receiving your request, your servicer must make appropriate corrections to your account and must provide you with written clarification regarding any dispute. During the 60-business-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of the Sections. You should seek legal advice if you believe your rights have been violated.

Sincerely,

Cory Walker
National Recovery Group

EX. Y

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

September 21, 2010

Mr. James S Hawkins EL III                          Account: R07101000-RC
159 Beach 97th St
Rockaway Beach, NY 11693                     Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600...

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 09/21/10 | 09/01/10 | R | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | | | | 0.00 | 0.00 | 0.00 |
| Balances | | | | | 4076.88 | 83590.10 | 0.00 | 135.00 |

Note that other charges could apply. Contact us for exact payoff figures. Next due: 10/01/10.

Payments received after date printed will be reflected in the next statement

DETACH HERE AND SEND LOWER PORTION WITH PAYMENT

Return this portion with your payment.

From

Mr. James S Hawkins EL III
159 Beach 97th St
Rockaway Beach, NY 11693

Reference

R07101000-RC, 159 Beach 97th St, Toll
Free help line 866 533 6600

Payment

Next due: 10/01/10
Regular pmt:                          226.39
After 10/16/10 add:                    15.00

Return to

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041

Extra principal:          _____
Total enclosed:       $   _____

# EX. Y-1

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

October 20, 2010

Mr. James S Hawkins EL III                    Account: R07101000-RC
159 Beach 97th St
Rockaway Beach, NY 11693                       Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600...

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 09/21/10 | 09/01/10 | R    | 0.00   |           | 0.00     | 0.00      | 0.00   | 0.00     |
|          |          | P    | 0.00   | Dailyint  | 0.00     | 0.00      | 0.00   | 0.00     |
|          |          | P    | 0.00   | 3.250%    | 0.00     | 0.00      | 0.00   | 0.00     |
| 10/20/10 | 10/01/10 | R    | 0.00   |           | 0.00     | 0.00      | 0.00   | 0.00     |
| Totals   |          |      | 0.00   |           | 0.00     | 0.00      | 0.00   | 0.00     |
| Balances |          |      |        |           | 4300.17  | 83590.10  | 0.00   | 150.00   |

Payments received after date printed will be reflected in the next statement
Note that other charges could apply. Contact us for exact payoff figures. Next due: 11/01/10.

DETACH HERE AND SEND LOWER PORTION WITH PAYMENT

Return this portion with your payment.

From                                          Reference

Mr. James S Hawkins EL III                    R07101000-RC, 159 Beach 97th St, Toll
159 Beach 97th St                             Free help line 866 533 6600
Rockaway Beach, NY 11693

                                              Payment

Return to                                     Next due: 11/01/10
                                              Regular pmt:                    226.39
**First American Funding**                    After 11/16/10 add:              15.00
318 Main St, Suite 201
Millburn, NJ 07041                            Extra principal:        _____
                                              Total enclosed:      $  _____

# EX. Y-2

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

December 27, 2010

Mr. James S Hawkins EL III                              Account: R07101000-RC
159 Beach 97th St
Rockaway Beach, NY 11693                              Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600...

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 12/24/10 | 12/01/10 | R | 0.00 | 3.250% | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 |
| Balances | | | | | 4757.30 | 83590.10 | 0.00 | 165.00 |

Note that other charges could apply. Contact us for exact payoff figures. Next due: 01/01/11.

Payments received after date printed will be reflected in the next statement

DETACH HERE AND SEND LOWER PORTION WITH PAYMENT

Return this portion with your payment.

From                                        Reference

                                            R07101000-RC, 159 Beach 97th St, Toll
                                            Free help line 866 533 6600
Mr. James S Hawkins EL III
159 Beach 97th St
Rockaway Beach, NY 11693

                                            Payment

                                            Next due: 01/01/11
Return to                                   Regular pmt:                    226.39
                                            After 01/16/11 add:              15.00
**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041                          Extra principal:        _____
                                            Total enclosed:      $  _____

EX. Y-3



**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

January 23, 2011

Mr. James S Hawkins EL III                              Account: R07101000-RC
159 Beach 97th St
Rockaway Beach, NY 11693                                Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600...

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 12/24/10 | 12/01/10 | R | 0.00 | 3.250% | 0.00 | 0.00 | 0.00 | 0.00 |
| 01/01/11 | 01/01/11 | R | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 |
| Balances | | | | | 4983.69 | 83590.10 | 0.00 | 165.00 |

Note that other charges could apply. Contact us for exact payoff figures. Next due: 02/01/11.

Payments received after date printed will be reflected in the next statement

DETACH HERE AND SEND LOWER PORTION WITH PAYMENT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Return this portion with your payment.

From                                                    Reference

Mr. James S Hawkins EL III                              R07101000-RC, 159 Beach 97th St, Toll
159 Beach 97th St                                       Free help line 866 533 6600
Rockaway Beach, NY 11693

                                                        Payment

Return to                                               Next due: 02/01/11
                                                        Regular pmt:                       226.39
**First American Funding**                              After 02/16/11 add 15.00: _____
318 Main St, Suite 201
Millburn, NJ 07041                                      Extra principal:      _____
                                                        Total enclosed:    $ _____

EX. Y-4

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

April 6, 2011

Mr. James S Hawkins EL III
159 Beach 97th St
Rockaway Beach, NY 11693

Account: R07101000-RC
Reference: Phone
Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600...

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 02/18/11 | 02/01/11 | R | 5561.38 | Phone | 241.39 | 0.00 | 0.00 | 0.00 |
| | | L | 0.00 | | 0.00 | 0.00 | 0.00 | 60.00 |
| | | S | 0.00 | | 0.00 | 0.00 | 0.00 | 120.00 |
| | | P | 0.00 | | 4968.69 | 171.30 | 0.00 | 0.00 |
| Totals | | | 5561.38 | | 5210.08 | 171.30 | 0.00 | 180.00 |
| Balances | | | | | | 83418.80 | 0.00 | 0.00 |

Payments received after date printed will be reflected in the next statement
Note that other charges could apply on account. Contact us for a payoff regular

DETACH HERE AND SEND LOWER PORTION WITH PAYMENT
------------------------------------------------------------------------------------

Return this portion with your payment.

From

Mr. James S Hawkins EL III
159 Beach 97th St
Rockaway Beach, NY 11693

Reference

R07101000-RC, 159 Beach 97th St, Toll
Free help line 866 533 6600

Payment

| | |
|---|---|
| Next due: 03/01/11 | |
| Next pmt+late pmts: | 679.17 |
| Late/Svc fees: | 15.00 |
| Part pmts rec'd: | 0.00 |
| Total: | 694.17 |
| Total enclosed: | $ _____ |

Return to

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041

# EX. Y-5

**First American Funding**
318 Main St, Suite 201
Millburn, NJ 07041
973-376-8400

April 27, 2011

Mr. James S Hawkins EL III                     Account: R07101000-RC
159 Beach 97th St
Rockaway Beach, NY 11693                        Collateral: 159 Beach 97th St

Dear Mr. Hawkins EL III,

This is the monthly statement for your next Home Mortgage Loan payment.

The balances shown below include Principal, plus past due interest and late fees.

We offer convenient and secure PAY BY PHONE, call toll free 866 533 6600…

| Pmt Date | Due Date | Type | Amount | Reference | Interest | Principal | Escrow | Late/Svc |
|----------|----------|------|--------|-----------|----------|-----------|--------|----------|
| 01/01/11 | 01/01/11 | R | 0.00 | 3.250% | 0.00 | 0.00 | 0.00 | 0.00 |
| 02/18/11 | 02/01/11 | R | 5561.38 | Phone | 241.39 | 0.00 | 0.00 | 0.00 |
| | | L | 0.00 | | 0.00 | 0.00 | 0.00 | 60.00 |
| | | S | 0.00 | | 0.00 | 0.00 | 0.00 | 120.00 |
| | | P | 0.00 | | 4968.69 | 171.30 | 0.00 | 0.00 |
| Totals | | | 5561.38 | | 5210.08 | 171.30 | 0.00 | 180.00 |
| Balances | | | | | 83418.80 | | 0.00 | 0.00 |

Payments received after date printed will be reflected in the next statement.

DETACH HERE AND SEND lower portion with payment. No credit card or cash. Do NOT report Phone Call NEXT payment 03/01/11.

Return this portion with your payment.

From                                            Reference

Mr. James S Hawkins EL III                      R07101000-RC, 159 Beach 97th St, Toll
159 Beach 97th St                               Free help line 866 533 6600
Rockaway Beach, NY 11693

                                                Payment

Return to                                       Next due: 03/01/11
                                                Next pmt+late pmts:          679.17
**First American Funding**                       Late/Svc fees:                30.00
318 Main St, Suite 201                           Part pmts rec'd:               0.00
Millburn, NJ 07041                               Total:                       709.17
                                                Total enclosed:      $ _____

EX. Z

**INVOICE / CUSTOMER DATA SHEET**                                      **2/18/2011**

**Transaction Amount**

**$ 5,564.38**

**Memo:** Acc# R07101000-RC

James S. Hawkins El III
159 Beach 97th St
Rockaway Beach, NY 11693

---

**INVOICE / CUSTOMER DATA SHEET**                                     **2/18/2011**
From:                    **First American Funding, LLC**

**Transaction Amount**

**$ 5,564.38**

Company Name:
Contact Name:            **James S. Hawkins El III**
Address:                 **159 Beach 97th St**
Address:
City, ST Zip:            **Rockaway Beach, NY 11693**
Phone Number:
EMail Address:

Bank Name:               **MCU Municipal Credit Union**
Bank City, ST:
Fraction:                                    User1:
Account Number:          **13590068224513**   User2:
Routing Number:          **226078036**        Delivery Status:
Check Number:            **0000**             Delivery Date:
Custom Routing::

Credit Card Number:
Expiration Date:

---

**Memo:**                Acc# R07101000-RC

Notes:
This letter will serve to confirm that a check by phone was
processed on the above date.
Confirmation# 392176830
If you have any questions, please contact customer service at
1-866-533-6600.

Thank you,

Customer Service
First American Funding, LLC