UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
JAMES S. HAWKINS-EL, III, *pro se*,  :
:
                     Plaintiff,  :
:       **MEMORANDUM AND ORDER**
               -against-  :       11-cv-2423 (DLI) (LB)
:
FIRST AMERICAN FUNDING, LLC, IRA  :
BAILEY, MARIA GREEN, SONIA  :
LARICCIA and BRANDON BAILEY,  :
:
                     Defendants.  :
:
----------------------------------------------------------- x

**DORA L. IRIZARRY, U.S. District Judge:**

     *Pro se* plaintiff James S. Hawkins-El, III, brought this action against First American Funding, LLC ("FAF"), Ira Bailey, Maria Green, Sonia LaRiccia and Brandon Bailey (collectively, "Individual Defendants" and, collectively with FAF, "Defendants") asserting claims pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, common law fraud and negligence. Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which Plaintiff opposed. For the reasons set forth below, Defendants' motion is granted.

**BACKGROUND**

     Plaintiff resides in Queens, New York. (Compl., Dkt. Entry 1, ¶ 1.)[1] FAF is a New Jersey limited liability company that purchases subordinate loans. (Decl. of Ira Bailey, Dkt. Entry 27-1 ("Bailey Decl."), ¶ 2.) The Individual Defendants are employees of FAF. (*Id.*)

     On November 1, 2006, Plaintiff signed a loan agreement and obtained a $100,000

---

[1] The Complaint in this action is an affidavit signed by Plaintiff. Thus, for purposes of this motion, the court treats it as evidence on the record.

1

revolving home equity line of credit from Washington Mutual Bank ("Washington Mutual"). (*See* Compl. Ex. D.)  The loan was secured by a mortgage co-signed by Plaintiff and another individual, Valerie Gaston, granting Washington Mutual a security interest in a property they co-owned in Queens, New York.[2]  (*See id.* Ex. K.)  The mortgage was recorded in the Office of the City Register of the City of New York on December 7, 2006.  (*See id.*)

On September 25, 2008, JPMorgan Chase Bank ("JPMorgan") merged with Washington Mutual and acquired Plaintiff's loan.  (Bailey Decl. ¶ 5.)  On August 17, 2009, Plaintiff sent a letter to JPMorgan disputing that he owed JPMorgan $83,803.07, as JPMorgan claimed, and demanding that JPMorgan fix its error.  (*Id.* Ex. F.)  Plaintiff also filed a complaint with the United States Office of the Comptroller of the Currency ("OCC") on February 20, 2010, asserting that JPMorgan "did not have the lawful/legal authority or right to convert [his] accounts" and that JPMorgan violated the Loan Agreement.  (*See* Compl. Ex. N.)  On November 2, 2010, the OCC responded to Plaintiff, explaining that it had contacted JPMorgan and JPMorgan maintained that neither it nor Washington Mutual violated any covenants of the loan agreements when the loan was transferred to JPMorgan.  (*Id.* Ex. C. at 1.)  The OCC also stated, "[b]ased on the information provided, the bank has provided you with documentation and explained why it believes that additional information is unavailable.  The adequacy of that information may be a factual dispute between you and the bank that we cannot address." (*Id.* at

---

[2] Plaintiff and Gaston previously obtained at least one other loan from another financial institution, AIG Federal Savings Bank ("AIG"), secured by a mortgage on their property. Plaintiff brought several actions alleging that AIG engaged in fraud, which the court dismissed as meritless.  The dismissals were affirmed summarily by the Second Circuit Court of Appeals. *See Hawkins-El v. AIG Fed. Sav. Bank*, 2007 WL 642952 (2d Cir. Feb. 27, 2007) (affirming dismissal of fraud claim against AIG); *Hawkins-El v. AIG Fed. Sav. Bank*, 334 F. App'x 394 (2d Cir. 2009) (affirming dismissal of second fraud action as barred by res judicata and for failure to prosecute).  After repeated filings by Plaintiff, the court barred Plaintiff from filing any additional actions against AIG without leave of the court.  *See Hawkins-El v. AIG Fed. Sav. Bank*, 2010 WL 1286380 (E.D.N.Y. Mar. 29, 2010).

2.)

On August 3, 2010, FAF purchased Plaintiff's loan and mortgage from JPMorgan. (*Id.* Ex. B.) In the following weeks, FAF sent two letters to Plaintiff and Gaston informing them that the loan and mortgage had been assigned to FAF from JPMorgan, describing some of their rights pursuant to RESPA and stating that their next payment of $226.39 was due on September 1, 2010. (*Id.* Exs. E, G.) Plaintiff responded with two letters he captioned as "legal notices" to FAF asserting that he is not "Mr. James S. Hawkins," does not have a home loan with JPMorgan and has not received a "good-bye" letter from JPMorgan. (*Id.* Exs. F, H.) Plaintiff also suggested that FAF had contacted him in error. (*See id.*)

On August 23, 2010, FAF responded to Plaintiff by letter, explaining that Washington Mutual had merged with JPMorgan, which had then transferred the loan to FAF, and invited Plaintiff to contact FAF to discuss his account. (*Id.* Ex. I.) FAF also enclosed copies of the note and mortgage, the agreement assigning the mortgage from JPMorgan to FAF and a "good-bye" letter to Plaintiff explaining that JPMorgan had assigned the debt to FAF. (*Id.*; *see also id.* Ex. W.) On August 26 and September 7, 2010, Plaintiff responded to FAF by letters, styled as "legal notices," asserting that: i) the assignment from JPMorgan was invalid; ii) he never received a "good-bye letter" from JPMorgan; and iii) he never borrowed $100,000 from Washington Mutual. (*Id.* Exs. J, L.)

On September 13, 2010, FAF sent a letter to Plaintiff notifying him that he was in default of the loan and mortgage, and, if he did not pay FAF the amount due, $4,211.88, within 30 days, the entire amount of the loan would become due immediately. (*Id.* Ex. M.) On September 18, 2010, Plaintiff responded to FAF by letter, asking FAF to stop referring to Plaintiff as "Mr. Hawkins" and asserting that the assignment of Plaintiff's debt from JPMorgan was invalid

3

because the debt was in dispute when it was sold to FAF.  (*Id.* Ex. O.)

In November 2010, FAF sent Plaintiff a warning that he had been in default for over 180 days and that he must pay $5,561.38 by February 22, 2011 to cure the default.  (*Id*. Ex. P.)  On February 18, 2011, Plaintiff paid FAF $5,564.38.  (*Id.* Ex. Z.)  On February 27, 2011, Plaintiff informed FAF by letter that the payment was made under duress and solely to halt the "illegal" foreclosure process.  (Pl.'s Aff. in Opp'n to Def.'s Mot. for Summ. J., Dkt. Entry 41 ("Pl.'s Aff."), Ex. H.)  Plaintiff also asked that FAF refund the money immediately.  (*Id.*)

FAF sent Plaintiff another notice on April 2, 2011, informing Plaintiff that he was in default and owed $467.78.  (Compl. Ex. T.)  In a separate letter dated April 2, 2011, FAF informed Plaintiff that his loan had been in default for over 30 days and that Plaintiff must cure the default by paying FAF $1,191.95 by July 2, 2011.  (*Id.* Ex. U.)  Plaintiff responded to FAF with a letter, dated April 8, 2011, again asserting that he disputed owing FAF any money.  (*Id.* Ex. V.)

On May 19, 2011, Plaintiff filed the instant action, seeking damages pursuant to RESPA, FDCPA, common law fraud and negligence.  (*See generally* Compl.)  Plaintiff alleges that:  i) FAF[3] violated RESPA by failing to respond to his letters, which he claims were "qualified written requests," as is required pursuant to the statute (*id.* ¶¶ 56-64); ii) FAF violated the FDCPA because:  a) it did not send Plaintiff verification of the debt when he disputed it; b) attempted to collect the debt while it was disputed; c) made false statements when trying to collect the debt; and d) harassed Plaintiff (*id.* ¶¶ 65-71); iii) FAF was negligent by breaching its legal duties pursuant to the FDCPA and RESPA (*id.* ¶ 72); and iv) Defendants fraudulently

---

[3] It is unclear from Plaintiff's pleadings which Defendants he brings each claim against.  To the extent Plaintiff asserts all claims against each Defendant, the court's analysis applies equally to all Defendants.

misrepresented that they were complying with the law, had a right to collect on the debt and that a paralegal was FAF's attorney. (*Id.* ¶¶ 73-82.)

Defendants moved for summary judgment, asserting that: i) FAF did not violate RESPA because Plaintiff's letters were not "qualified written requests" under the statute and subordinated loans, such as Plaintiff's, are not covered by RESPA (Defs.' Mem. of Law in Supp. of Mot. Pursuant to F.R.C.P. 56, Dkt. Entry 30 ("Defs.' Mem."), at 3-6); ii) Plaintiff's negligence claim is insufficient because Defendants do not owe any non-contractual duties to Plaintiff (*id.* at 7); iii) Plaintiff has not shown specifically how each defendant has defrauded Plaintiff or reasonable reliance (*id.* at 8-9); iv) the FDCPA does not apply to FAF because: a) it is not a debt collector; b) the statute does not apply to mortgages; and c) Plaintiff has not shown any violations of the statute (*id.* at 9-12); and v) there is no evidence that Plaintiff sustained damages. (*Id.* at 7-8.) Plaintiff opposed Defendants' motion, essentially restating many of the same allegations he made in the Complaint, *i.e.*, that the debt is invalid and Defendants acted in bad faith and in violation of RESPA and the FDCPA. (*See generally* Pl.'s Aff. 1-19.)

## **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

The court holds *pro se* pleadings to "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The court construes them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

## **DISCUSSION**

**I.     RESPA**

Defendants contend that they did not violate RESPA as a matter of law because: i) Plaintiff's letters were not qualified written requests under the statute; ii) FAF's responses to the letters were adequate; and iii) RESPA does not apply here because the loan at issue was a subordinate mortgage loan. (*See* Defs.' Mem. 3-6.) Plaintiff counters that his letters, or, as he refers to them, "lawful notices," were qualified written requests to which FAF did not respond. (*See* Pl.'s Aff. 1-7.)

As an initial matter, the court holds that RESPA applies to Plaintiff's debt and Plaintiff's letters to FAF disputing the debt were qualified written requests. Pursuant to RESPA:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal

6

>public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). In addition, the servicer is obligated to conduct an investigation and respond within 60 days with a written explanation, including "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2).

RESPA defines "federally related mortgage loans" as, *inter alia*, any loan that "is secured by a first or subordinate lien on residential real property." 12 U.S.C. § 2602(1)(A). The statute defines "qualified written request" as:

>a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(1)(B).

Plaintiff's debt is secured by a subordinate loan secured by real property and, therefore, falls within the ambit of RESPA's definition of "federally related mortgage loans." Accordingly, FAF was required to respond to any qualified written requests Plaintiff made. In asserting that RESPA does not apply to Plaintiff's debt, Defendants rely upon RESPA's implementing regulations, which provide that the qualified written request provision "does not include subordinate lien loans." 24 C.F.R. § 3500.21(a), (e). As other courts have acknowledged, this regulatory definition "directly conflicts with the language in RESPA" that includes subordinated liens in its borrower inquiry provisions. *Cortez v. Keystone Bank, Inc.*, 2000 WL 536666, at \*11 (E.D. Pa. May 2, 2000); *see also MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 n.7 (N.D.

7

Ill. 2000) (noting in *dicta* that the regulation conflicts with RESPA).  Defendant does not suggest that these provisions can be reconciled and the court finds that they are incompatible.  Therefore, the court follows RESPA's more inclusive statutory language, because an administrative agency's regulation is ineffective to the extent it conflicts with its parent statute.  *See United States v. Larionoff*, 431 U.S. 864, 873 (1977) ("For regulations, in order to be valid must be consistent with the statute under which they are promulgated.").  Accordingly, RESPA applies to Plaintiff's loan.

The court also finds that Plaintiff's letters were qualified written requests.  The letters provided FAF with sufficient information to identify the borrower, provided reasons why Plaintiff disputed that he owed money to FAF and requested information about JPMorgan's transfer of the loan to FAF.  *See Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 111 n.18 (E.D.N.Y. 2011) (holding that a letter is a qualified written request that, *inter alia*, "states that plaintiff seeks to rescind the transaction [and] lists a number of alleged errors in the disclosures plaintiff received upon Closing.").  Thus, pursuant to RESPA, FAF was required to address Plaintiff's dispute.

The court finds that FAF responded adequately to Plaintiff's qualified written requests.  Construed liberally, in light of his *pro se* status, Plaintiff's first letter to FAF inquired about whether he owed money to JPMorgan and asked about a "good-bye" letter from JPMorgan showing that it no longer owned Plaintiff's debt.  (*See* Compl. Ex. F.)  FAF responded within 20 days, and, not only acknowledged receipt of Plaintiff's letter, but also explained that his loan was originated through Washington Mutual, which later merged with JPMorgan, and then was sold to FAF.  (*See id.* Ex. I.)  FAF also enclosed documentation of the loan and the sale of the loan from JPMorgan to FAF, as well as the "good-bye" letter telling Plaintiff that his loan was sold to FAF.

8

(*Id.*; *see also id.* Ex. W.) Indeed, the debt he purportedly owed to JPMorgan, contrary to the implication in his letter, could not have come as a surprise to Plaintiff, as he actively had been disputing the debt with JPMorgan before it was sold to FAF. (*See id.* Ex. C.) As required by RESPA, FAF's response also included FAF's contact information in the event he had further inquiries. *See Mazzei v. The Money Store*, 552 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (Granting summary judgment where the defendant responded to written request for loan documents with copies of the signed agreement).

To the extent Plaintiff claims that FAF violated the statute because it did not respond to every subsequent letter sent by FAF, these letters raised essentially the same dispute described in his initial letter. FAF's initial response adequately addressed Plaintiff's concerns pursuant to RESPA. There would have been little, if any, benefit for FAF to continue to send the same information following every letter sent by Plaintiff. Therefore, Defendant's summary judgment motion is granted with respect to Plaintiff's RESPA claim.

**II.    FDCPA**

Defendants assert that the FDCPA does not apply to FAF because companies that hold and service mortgages are not debt collectors pursuant to the statute, which they assert does not cover mortgage loans. (*See* Defs.' Mem. 10-11.) Defendants further contend that Plaintiff's FDCPA claim is meritless. (*See id.* 11-12.) Plaintiff responds that FAF is a debt collector and it is not collecting its own debt because it purchased the debt from JPMorgan. (See Pl.'s Aff. 14-16.) Plaintiff also argues that FAF violated the FDCPA because the record shows, *inter alia*, that FAF did not verify the disputed debt, continued to collect the debt even though it was disputed, harassed Plaintiff and misrepresented that a paralegal, Eric Heinsler, was FAF's attorney. (*See id.* 16-18.)

9

Defendant's papers do not provide sufficient information for the court to conclude definitively whether FAF is a debt collector under the FDCPA.[4] Nonetheless, construing Plaintiff's submissions to raise the strongest arguments they suggest, the court assumes that FAF is a debt collector and that the FDCPA applies. However, even if the court assumes that the FDCPA applies here, Plaintiff has failed to raise a genuine issue of material fact that FAF has violated the FDCPA.

Pursuant to the FDCPA, if a consumer notifies the debt collector within thirty days of the "initial communication" from the debt collector:

> that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Plaintiff first disputed his debt through his August 2010 letter to FAF, stating that he did not have a home loan with JPMorgan and never received a "good-bye" letter. (Compl. Ex. F.) As discussed previously (*see supra* § I), FAF explained in a letter dated August 23, 2010 that the loan was originated by Washington Mutual, which had merged with JPMorgan, and that FAF had purchased the loan. (*Id.* Ex. I.) FAF also enclosed copies of the loan and mortgage documents signed by Plaintiff, the assignment agreement between JPMorgan and FAF and a copy of the "good-bye" letter. (*See id.*) This response directly addressed Plaintiff's

---

[4] For example, other than a vague description of FAF in an affidavit from its Vice-President, there is nothing in the record describing FAF's business, including whether it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6) (defining debt collector). Moreover, contrary to FAF's contention, owning Plaintiff's debt does not automatically put it outside the definition of debt collector. *Farber v. NP Funding II L.P.*, 1997 WL 913335, at *3 n.6 (E.D.N.Y. Dec. 9, 1997) (rejecting assertion that entity is a creditor, rather than a debt collector, "simply because it owns plaintiff's mortgage."). Indeed, in its letters to Plaintiff, FAF stated that it "is a debt collector; all information will be used for that purpose." (*See* Compl. Ex. T.)

dispute and was sufficient to verify the loan for purposes of the FDCPA. *See Blanc v. Palisades Collection, LLP*, 2007 WL 3254381, at *7 (S.D.N.Y. Nov. 1, 2007) ("At the minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." (quoting *Clark v. Capital Credit & Collection Servs.*, 460 F. 3d 1162, 1173-74 (9th Cir. 2006)) (quotation marks omitted)). The record shows that FAF did not do anything to try to collect on the debt until weeks after it had verified the debt by letter dated September 13, 2010 notifying Plaintiff that he was in default. (*See* Compl. Ex. M.) Therefore, FAF did not violate the FDCPA by continuing its collection efforts after it had verified the debt.

Plaintiff's assertions that his continued dispute of the debt did not permit FAF to collect on the debt, even after FAF's August 23, 2010 verification letter, fail to raise an issue of material fact. The letters Plaintiff sent to FAF in the ensuing months make the same assertions that he never borrowed money from Washington Mutual, with additional assertions that, because Plaintiff sent a letter to the OCC disputing the debt, the debt is in dispute and that JPMorgan somehow "abandoned" the loan when it was sold to FAF. Plaintiff's debt already had been verified for purposes of the FDCPA. Plaintiff cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is "disputed." If Plaintiff were permitted to do so, debtors would be able to prevent collection permanently by sending letters, regardless of their merit, stating that the debt is in dispute. Such a result is untenable, as it would make debts effectively uncollectable.

Plaintiff also contends that FAF flouted the FDCPA by making various false statements in connection with the loan. (*See* Pl.'s Aff. 16-18; Compl. ¶¶ 67-71.) The FDCPA prohibits debt collectors from deceptive conduct, including misrepresentations of "the character, amount,

11

or legal status of any debt," false statements "that any individual is an attorney or that any communication is from an attorney," "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" and "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2), (3), (8), (10).

Plaintiff alleges that FAF misrepresented the character, amount and legal status of his debt because he did not actually owe money to FAF. However, Plaintiff has not put forward any evidence that he is not the same James S. Hawkins-El III that signed the loan mortgage documents or that he otherwise completely paid off the loan. *See Johnson v. Capital Mgmt. Servs.*, 2011 WL 6012509, at *6 (W.D.N.Y. Dec. 1, 2011) ("[I]t appears that Plaintiff merely seeks to air his dissatisfaction with CMS' efforts at collecting an allegedly invalid debt, which is not actionable in this proceeding."). Plaintiff also asserts that FAF communicated credit information "known to be false" by failing to communicate the debt was in dispute. (*See* Compl. ¶ 69.) Yet there is nothing in the record showing that FAF communicated any credit information to any third parties without properly acknowledging that Plaintiff disputed the debt. Plaintiff's contention that FAF misrepresented that it planned to comply with federal law in collecting the debt fares no better, as there is nothing in the record suggesting that FAF was "planning" to violate federal law or that it did violate federal law. (*See supra* § I.)

Plaintiff further alleges that FAF engaged in misleading conduct by misrepresenting that a paralegal, Eric Heinsler, was FAF's attorney. While Plaintiff alleges that he was told by an employee of FAF that Heinsler was an attorney, there is no evidence that Heinsler had any involvement in collecting the debt. The Complaint reflects that Plaintiff asked FAF to give his letters to FAF's attorney and was told that FAF was sending it to Heinsler. (*See* Compl. ¶ 19.)

12

Plaintiff then called Heinsler repeatedly, including four times within a two-hour span on February 17, 2011, and left messages, which went unreturned. (*Id.* ¶¶ 21-24.) When he finally reached Heinsler on the telephone, it was by using a number that Plaintiff found through a "computer search," and Heinsler immediately told Plaintiff, "I am not a lawyer nor do I want to give that impression." (*Id.* ¶¶ 39-40.) Thus, Plaintiff's allegations do not reflect that FAF was trying to collect money from Plaintiff by misrepresenting that its communications were from an attorney. Rather, the record shows that Plaintiff tracked down Heinsler on his own and was immediately told that Heinsler was not an attorney. This is far afield from the type of conduct that the FDCPA is aimed at preventing.

Plaintiff's final allegation, that FAF violated the FDCPA by harassing and abusing Plaintiff through its use of "profanity" and "insult laced tirades," does not save his claim, nor does it have any merit. (*See id.* ¶ 71.) The FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including using "obscene or profane language." 15 U.S.C. § 1692d. However, "[c]ourts in this circuit have held that the 'FDCPA's protections are not triggered by communications initiated by someone other than the debt collector.'" *Derisme v. Hunt Leibert Jacobson P.C.*, 2012 WL 3000386, at *18 (D. Conn. July 23, 2012) (quoting *Boyd v. J.E. Robert Co.*, 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010)).

While Plaintiff alleges that Ira Bailey, Vice-President of FAF, was angry on two phone calls in March 2011, the language he attributes to Bailey is neither profane nor abusive. Moreover, these telephone calls were initiated by Plaintiff, as part of a series of calls he made to FAF. (*See* Compl. ¶¶ 42, 46.) The third telephone call, also initiated by Plaintiff, during which Plaintiff claims Bailey was angry, Bailey told Plaintiff to stop calling and harassing him. (*Id.* ¶¶

54.) Indeed, rather than FAF harassing Plaintiff, the Complaint shows that Plaintiff barraged FAF's employees with telephone calls and other communications from February through April 2011. (*See id.* ¶¶ 18-55.) Under these circumstances, there is no issue of material fact that Plaintiff was harassed or abused by FAF, because FAF was not communicating with Plaintiff for purposes of collecting a debt, but was responding to his inquiries during the telephone calls at issue, which were initiated by Plaintiff.

Accordingly, summary judgment is granted in favor of Defendant on the FDCPA claim.

## III. Negligence

Plaintiff contends that FAF was negligent because it breached the duty of care imposed under RESPA and the FDCPA. (*See id.* ¶ 72; Pl.'s Aff. 8-9.) Defendants assert that Plaintiff's negligence claim is meritless because Plaintiff has not shown that FAF had any non-statutory or non-contractual duty to Plaintiff. (*See* Defs.' Mem. 7.)

Under New York law,[5] "[t]o sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F. 3d 251, 259 (2d Cir. 1997). As an initial matter, Defendants are mistaken in arguing that they only have a contractual duty to Plaintiff. Creditors and debt collectors owe

---

[5] The court applies New York law because the mortgaged property is located in New York and New York has the strongest connection to this dispute. *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F. 3d 377, 384 (2d Cir. 2006) ("The law of the jurisdiction having the greatest interest in the litigation will be applied." (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)) (alteration and quotation marks omitted)). In the section of their memorandum of law discussing negligence, Defendants inexplicably cite only to a Northern District of Illinois case discussing Illinois law. (*See* Defs.' Mem. 7.) However, the court does not take this to mean that Defendants believe that Illinois law governs Plaintiff's negligence claim, as there is no connection between Illinois and this dispute. Instead, the citation appears to reflect Defendants' peculiar habit throughout their memorandum law of citing only to cases from outside the Second Circuit to support propositions for which there is ample in-circuit authority.

debtors "a duty of reasonable care" in the collection of their debts. *Colo. Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005). However, Plaintiff defines this duty as the duty owed under RESPA and the FDCPA (*see* Compl. ¶ 72), which Defendants did not breach. (*See supra* §§ I, II.). Accordingly, summary judgment is granted to Defendants on Plaintiff's negligence claim.

## IV. Fraud

Defendants contend that summary judgment is appropriate as to Plaintiff's common law fraud claim because: i) Plaintiff has not satisfied the requirements of Rule 9(b) of the Federal Rules of Civil Procedure; ii) Plaintiff cannot show reasonable reliance; and iii) the events underlying the claim arose after the initial transaction between Plaintiff and Washington Mutual. (*See* Defs.' Mem. 8-9.) Plaintiff responds by repeating the allegations he made in the Complaint that FAF sent him notices of impending foreclosure that acknowledge his legal right to dispute the debt, while disregarding his right not to have the debt collected while the debt is in dispute. (*See* Pl.'s Aff. 12-14.) In opposition, Plaintiff appears to rely on the Complaint's allegations that Defendants misrepresented that they would comply with RESPA and the FDCPA, and that Heinsler was an attorney. (*See* Compl. ¶¶ 74-77.)

To plead fraud pursuant to New York law,[6] "a plaintiff must allege that the defendant made a material false representation, that the defendant knew of the falsity (scienter), that the defendant acted with intent to defraud, that the plaintiff reasonably relied on the false representation, and damages." *Marcus v. AT&T Corp.*, 138 F. 3d 46, 63 (2d Cir. 1998). Notably, on summary judgment, courts have excused parties' failures to satisfy Rule 9(b) when

---

[6] Plaintiff assumes that New York law applies to the fraud claim, (*see* Compl. 20), and the court agrees. Although, in their fraud discussion, Defendants quote extensively from *Swartz v. KPMG LLP*, 476 F. 3d 756 (9th Cir. 2007), a Ninth Circuit case construing Washington State law, the court again assumes that Defendants do not dispute that New York law applies, as Washington State has no connection to this dispute.

15

other evidence in the record adduced through discovery demonstrates that the plaintiff would be able to replead with the requisite specificity. *See Nakano v. Jamie Sadock, Inc.*, 2000 WL 680365, at *8 (S.D.N.Y. May 25, 2000) ("Had [counterclaim defendants] raised a Rule 9(b) objection to this allegation in a motion to dismiss, we might well have found the objection to be well taken . . . and granted Defendants leave to amend Counterclaim II to meet the objection. At this stage of the litigation, however, no purpose would be served by following such a course.") However, where the evidence on the record, "if incorporated into an amended answer, would fail to comply with Rule 9(b)'s strictures," summary judgment is appropriate. *Bay State Mill. Co. v. Terranova Bakers Supplies Corp.*, 871 F. Supp. 703, 707 (S.D.N.Y. 1995).

Here, Plaintiff has not adequately pled fraud or pointed to any evidence in the record showing that it could replead fraud with the requisite specificity. He does not set forth any allegation or point to any evidence suggesting that Defendants did not believe that they complied with RESPA and the FDCPA or that they actually did not comply with those statutes. (*See supra* §§ I, II.) Plaintiff also does not plead or make any evidentiary showing that the purported misrepresentations about Heinsler were done with the knowledge that he was not a lawyer. Moreover, Plaintiff cannot claim that he reasonably relied upon any misrepresentation because he was told immediately, upon contacting Heinsler, that Heinsler was a paralegal. (Compl. ¶¶ 39-40.) Plaintiff's allegations that FAF fraudulently misrepresented that he could dispute his debt is meritless for the same reasons his FDCPA claim is not viable. Plaintiff was given a chance to dispute his debt as FAF claimed, but once that debt was verified, FAF permissibly resumed collecting the debt. (*See supra* § II.)

Accordingly, Defendant is granted summary judgment on Plaintiff's fraud claim.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted and the complaint is dismissed. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


SO ORDERED.

Dated: Brooklyn, New York
September 19, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge